# EXHIBIT A

1-Complaint.pdf

2-Summons.pdf

3-Tolling Agreement.pdf

4-Notice of Withdrawal of Counsel.pdf

5-Amended Tolling Agreement.pdf

6-Second Amended Tolling Agreement.pdf

7-Answer and Affirmative Defenses - Escambia County.pdf

8-Order of Recusal.pdf

9-Notice of Case Management Conference.pdf

10-Joint Stipulation for Plaintiff to File Amended Complaint.pdf

11-Order Granting Joint Stipulation for Plaintiff to File Amended Complaint.pdf

12-Amended Complaint.pdf

13-Motion to Dismiss Count III with Prejudice.pdf

14-Answer and Affirmative Defenses to Amended Complaint.pdf

## IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,

     *Plaintiff,*

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

     *Defendant.*

Case No:
Division:

## COMPLAINT

Plaintiff, Eager Beaver Professional Tree Care, LLC (Eager Beaver), sues Defendant, Escambia County Board of County Commissioners (BCC), and states:

### Parties and Jurisdiction

1. Eager Beaver is a Florida limited liability company with its principal place of business in Gulf Breeze, Florida.

2. The BCC is a Florida county governing body located in, and governing, Escambia County, Florida.

3. This Court has jurisdiction over the subject matter of this action because it is an action for a declaratory judgment, the value of which exceeds $30,000. Alternatively, to the extent the value of the requested declaration is impossible to determine, this Court may exercise jurisdiction over this action. *See Davis v. Pinellas Cty. Police Benev. Ass'n, Inc.*, 743 So. 2d 540, 541 (Fla. 2d DCA 1998).

4. This Court is a proper venue because the BCC is located in Escambia County.

## Factual Background

5.   Eager Beaver is a land management company that provides tree services—such as trimming, removal, and stump grinding.

6.   With the intent of creating a yard vegetation waste recycling facility, Eager Beaver purchased a 70.52 acre property in Escambia County. The property was zoned as to allow the installation of a recycling facility as a conditional use.

7.   Specifically, Eager Beaver's contemplated activities were, and are, governed by the portion of the Escambia County Code of Ordinances regarding construction and demolition debris (C&DD). The C&DD section of the code provides that it encompasses "[s]upplemental regulation of the operation and disposal of construction and demolition disposal and recycling facilities." Escambia County, Fla., Code of Ordinances § 82-224(2). The code further provides that C&DD includes "tree remains, trees, and other vegetative matter," which is defined as "yard waste recycling." *Id.* § 82-225.  Eager Beaver's concurrent permit with the Florida Department of Environmental Protection is only for "yard waste recycling," which is the only scope of operations it applied for to the BCC.

8.   On August 24, 2016, the development order for the recycling facility was approved, contingent upon the review of the recycling conditional use permit by the BCC.

9.   The nature of that review was governed by the land development code, which provides: "If the reviewing board finds from the record of the hearing that the applicant has presented competent substantial evidence proving the required conditions, the board *shall* grant a conditional use." Escambia County, Fla. Land Development Code § 2-6.4(c)(4)(a) (emphasis added).

10. The BCC review was delayed despite objection by Eager Beaver.  On December 8, 2016, the BCC held a quasi-judicial public hearing on the issue. Eager Beaver submitted documentary

2

evidence on each condition for the requested use. However, the BCC gave Eager Beaver only six minutes to present its case, and then, without making any findings, declined to issue a permit.

11. In response, Eager Beaver filed a petition for writ of certiorari with the Escambia County Circuit Court.

12. The circuit court granted Eager Beaver's petition. In doing so, the court observed that providing Eager Beaver—over objection—with only six minutes to present its case "cannot qualify as procedural due process." The court further observed that Eager Beaver's evidentiary submission had made the requisite showing, and remanded with instructions the permit should issue and no further hearing was lawfully authorized.

13. Subsequently, the BCC filed its own petition for writ of certiorari with the First District Court of Appeal.

14. The First District Court of Appeal denied the BCC's petition without opinion. *Escambia Cty. Bd. of Cty. Comm'rs v. Eager Beaver, LLC*, 254 So. 3d 589 (Mem) (Fla. 1st DCA 2018).

15. The BCC was then forced to issue Eager Beaver a permit. However, undeterred by the rulings against it, the BCC has since attempted to reform the terms of Eager Beaver's permit by issuing a different permit more restrictive than the one it had applied for and had adjudicated.

16. Rather than issue the proper permit for "yard waste recycling," under section 82-228(4) of the Escambia County Code, with its proper five-year renewal period, the BCC issued a "solid waste permit" under section 82-103(6-7), which covers landfills, which Eager Beaver is not properly authorized to operate, and which requires an annual renewal.

17. Over written objection and demand that the BCC issue the correct of the form of permit, Eager Beaver operated yard waste recycling under the incorrect form of permit, with an

understanding given by the BCC that its code was being revised and that a corrected permit would be forthcoming.

18. No revision to the relevant code has yet occurred. Rather than correct the permit, the BCC has since issued an irregular "extension" to the improper annual permit, which extends the renewal period an additional six months. Moreover, belying the necessity of any "extension," the Escambia County Code, under section 82-228(a)(4), clearly states that all C&DD permits "shall be five years in duration."

19. Eager Beaver has raised this issue to the BCC on numerous occasions, but the BCC has persisted in its efforts to misclassify Eager Beaver's permit in an attempt to subject Eager Beaver to a shorter permitting period.

20. In addition, and because of the BCC's incorrect permit designation, Eager Beaver suffers from adverse public misperception of its operations and business. This misperception results from the BCC's express promulgation of a false statement by placing Eager Beaver under a "landfill" permit, which is contrary to both fact and law.

21. In the latest sortie in its campaign to deny Eager Beaver the permit to which it is entitled, the BCC has scheduled a public hearing for April 2, 2020 to "[r]eview and approve, modify, or deny the renewal of a permit for a concrete recycling facility located at 2170 Longleaf Drive." **EXHIBIT A**.

22. Eager Beaver is not requesting a concrete recycling permit, nor has it ever requested such a permit, or operated such a facility.

23. A concrete recycling facility is located on a neighboring property. While the BCC's new characterization of Eager Beaver's permit may be a simple error, it may also be an attempt to direct

4

animosity in the community towards the concrete recycling facility at Eager Beaver.  At any rate, this pending hearing underscores Eager Beaver's urgent need for a declaration from this Court.

## COUNT I
### Declaratory Judgment as to Permitting

24. Eager Beaver re-alleges and incorporates the allegations contained in paragraphs 1-23.

25. This is an action for a declaratory judgment pursuant to section 86.011, Florida Statutes, et seq.

26. There is a present controversy as to a state of facts in that the parties dispute the nature of the permit issued to Eager Beaver.

27. Eager Beaver's continued enjoyment of its rights under its permit is dependent on the resolution of this dispute.

28. The parties reasonably have an adverse and antagonistic interest in the subject matter of this dispute.

29. All parties having an interest in this dispute are before this Court and this action is not brought merely to seek legal advice—nor is it brought to answer questions propounded from curiosity.

WHEREFORE, Eager Beaver demands that this honorable Court enter judgment in its favor declaring that its permit is for a five year period under the plain language of the relevant portions of the Escambia County Code of Ordinances.

Dated this 3rd day of March, 2020.

Respectfully submitted,

/s/ *George R. Mead, II*
GEORGE R. MEAD, II
Florida Bar No. 096490
QUINN B. RITTER
Florida Bar No. 1018135

MOORE, HILL & WESTMORELAND
350 West Cedar Street, Suite 100
Post Office Box 13290
Pensacola, FL 32591-3290
(850) 434-3541
(850) 435-7899 (fax)
emead@mhw-law.com
qritter@mhw-law.com
hmalone@mhw-law.com
Counsel for Plaintiff

THROUGH THESE DOORS WALK ONLY THE FINEST PEOPLE – THE CITIZENS OF ESCAMBIA COUNTY. DECISIONS ARE MADE IN THIS ROOM **AFFECTING THE DAILY LIVES OF OUR PEOPLE. DIGNIFIED CONDUCT IS APPRECIATED.**

### CHAMBER RULES

1. **IF YOU WISH TO SPEAK, YOU WILL BE HEARD.**
2. **YOU MUST SIGN UP TO SPEAK. SIGN-UP SHEETS ARE AVAILABLE AT THE BACK OF THE ROOM.**
3. **YOU ARE REQUESTED TO KEEP YOUR REMARKS BRIEF AND FACTUAL.**
4. **BOTH SIDES ON AN ISSUE WILL BE GRANTED UNIFORM/MAXIMUM TIME TO SPEAK.**
5. **DURING QUASI-JUDICIAL HEARINGS (I.E., REZONINGS), CONDUCT IS VERY FORMAL AND REGULATED BY SUPREME COURT DECISIONS.**

Escambia County is committed to making our website accessible. If you use assistive technology, for example a screen reader, and have difficulty accessing information in this agenda online, please contact our ADA Coordinator at ADA@myescambia.com or 850-595-1637.

## PLEASE NOTE THAT ALL BCC MEETINGS ARE RECORDED AND TELEVISED

### AGENDA
### Board of County Commissioners
### Regular Meeting – March 5, 2020 – 5:30 p.m.
### Ernie Lee Magaha Government Building – First Floor

1.   Call to Order.

Please turn your cell phone to the vibrate, silence, or off setting.

The Board of County Commissioners allows any person to speak regarding an item on the Agenda. The speaker is limited to three (3) minutes, unless otherwise determined by the Chairman, to allow sufficient time for all speakers. Speakers shall refrain from abusive or profane remarks, disruptive outbursts, protests, or other conduct which interferes with the orderly conduct of the meeting. Upon completion of the Public comment period, discussion is limited to Board members and questions raised by the Board.

2.   Invocation – Commissioner Bergosh.

3.   Pledge of Allegiance to the Flag.

4.   Are there any items to be added to the agenda?

Recommendation: That the Board adopt the agenda as prepared **(or duly amended).**

5.   Commissioners' Forum.

6.   Proclamations.

Recommendation:  That the Board take the following action:

A. Adopt the Proclamation commending and congratulating Ronnie Johnson, a Field Supervisor in the Operations Division of the Waste Services Department, on his selection as the "Employee of the Month" for March 2020;

B. Adopt the Proclamation commending and congratulating the University of West Florida Football Team, the Argonauts, for winning their first National Title in the program's fourth year of NCAA Division II competition;

C. Adopt the Proclamation honoring and recognizing Rebuild Northwest Florida for the tremendous affect they have had assisting our residents in preparing their homes against hurricane force winds and storm damage; and

EXHIBIT A to Complaint

1. <u>Recommendation Concerning the Scheduling of Public Hearings</u>

   That the Board authorize the scheduling of the following Public Hearings:

   **April 2, 2020**

   **A.** 5:45 p.m. - A Public Hearing - CIP Ordinance

   *Summary: The purpose of this ordinance is to fulfill the requirements of Section 163.3177(3)(b), Florida Statutes and Objective CIE 1.2, Five-Year Schedule, Escambia County Comprehensive Plan: 2030 by adopting the 2019-2023 update to the Five-Year Schedule of Capital Improvements.*

   **B.** 5:46 p.m. - A Public Hearing - LSA-2019-05 - 7045 Pine Forest Road (first of two public hearings)

   *Summary: Applicant is requesting to change the Future Land Use from Commercial to Mixed-Use Urban.*

   **C.** 5:47 p.m. - A Public Hearing - Perdido Landfill - Renewal of Concrete Recycling Facility Permit

   *Summary: Review and approve, modify, or deny the renewal of a permit for a concrete recycling facility located at 13009 Beulah Road.*

   **D.** 5:48 p.m. - A Public Hearing - Brickton Borrow Pit Permit Renewal

   *Summary: Review and approve, modify, or deny the renewal of a permit for a borrow pit located at 8800 N. Highway 29.*

   **E.** 5:49 p.m. - A Public Hearing - Eager Beaver Recycling Permit Renewal

   *Summary: Review and approve, modify, or deny the renewal of a permit for a concrete recycling facility located at 2170 Longleaf Drive.*

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**EAGER BEAVER PROFESSIONAL TREE CARE LLC**

      PLAINTIFF,

Vs.

                                   CASE NO: **2020 CA 000328**

                                   DIVISION:   **N**

**ESCAMBIA COUNTY BOARD OF COUNTY COMMISSIONERS**

      DEFENDANT,

**SUMMONS**

**THE STATE OF FLORIDA:**

**To Each Sheriff of the State:**

    **YOU ARE COMMANDED** to serve this summons and a copy of the complaint in the above styled cause upon the defendant **ESCAMBIA COUNTY BOARD OF COUNTY COMMISSIONERS  C/O ALISON PERDUE ROGERS, COUNTY ATTORNEY 221 PALAFOX PL, STE 430 PENSACOLA, FL 32502**

Each defendant is hereby required to serve written defenses to said complaint on

        plaintiff's attorney(s), whose address is

        **GEORGE R MEAD II**

        **350 W CEDAR ST STE 100**

        **PENSACOLA, FL 32502**

within **20 days** after service of this summons upon you, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on said attorney or immediately thereafter.  If you fail to do so, a default will be entered against you for the relief demanded in the complaint.

Witness, my hand and the seal of this Court on this **5th day of March, 2020**

PAM CHILDERS

CLERK OF THE CIRCUIT COURT

By: *Kathy Benoit*

      Deputy Clerk

* Except when suit is brought pursuant to Section 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to be inserted as to it is 40 days.  When suit is brought pursuant to Section 768.28, Florida Statutes, the time to be inserted is 30 days.

CASUM2053P

## IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,

     *Plaintiff*,

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

     *Defendant*.

Case No: 2020 CA 00328
Division:

## <u>TOLLING AGREEMENT</u>

  The parties to this action by their undersigned counsel hereby agree that the Defendant's

duty to answer or otherwise respond to the Complaint herein shall be tolled for 60 days from the

date hereof unless otherwise extended by the parties.

  Dated this 2nd day of July, 2020.

/s/ *George R. Mead, II*
GEORGE R. MEAD, II
Florida Bar No. 096490
MOORE, HILL & WESTMORELAND
350 West Cedar Street, Suite 100
Post Office Box 13290
Pensacola, FL 32591-3290
(850) 434-3541
(850) 435-7899 (fax)
emead@mhw-law.com
hmalone@mhw-law.com
*Counsel for Plaintiff*

/s/ *Charles V. Peppler*
CHARLES V. PEPPLER
Deputy County Attorney
Florida Bar No. 239739
Escambia County Attorney's Office
221 Palafox Place, Ste. 430
Pensacola, FL 32502
(850) 595-4970
(850) 595-4979
kcchappell@myescambia.com
kmhill@myescambia.com
Counsel for Defendant

Case 3:21-cv-00515-TKW-EMT Document 2-1 Filed 03/25/21 Page 12 of 94

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,

        *Plaintiff*,

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

        *Defendant*.

Case No: 2020 CA 00328
Division:

<u>**NOTICE OF WITHDRAWAL OF COUNSEL**</u>

    Quinn B. Ritter herby files this Notice of Withdrawal as co-counsel for Eager Beaver Professional

Tree Care, LLC (Eager Beaver) in the above-styled cause. The Undersigned notifies the Court that he

will no longer be employed by Moore, Hill & Westmoreland, P.A. as of July 24, 2020. Eager Beaver

will continue to be represented by George R. Mead II of Moore, Hill & Westmoreland, P.A.

        <u>*/s/ Quinn B. Ritter*</u>
        Quinn B. Ritter
        Florida Bar No. 1018135
        MOORE, HILL & WESTMORELAND, P.A.
        350 W. Cedar Street, Suite 100
        Pensacola, Florida 32502
        Telephone: (850) 434-3541
        qritter@mhw-law.com
        *Counsel for Plaintiff*

Case 3:21-cv-00515-TKW-EMT   Document 2-1   Filed 03/25/21   Page 13 of 94

## IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,

                    *Plaintiff*,

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

                    *Defendant*.

Case No: 2020 CA 00328
Division:

## <u>AMENDED TOLLING AGREEMENT</u>

The parties to this action by their undersigned counsel hereby agree that the Defendant's

duty to answer or otherwise respond to the Complaint herein shall be tolled until October 15,

2020 unless otherwise extended by the parties.

Dated this 10th day of August, 2020.

/s/ *George R. Mead, II*
GEORGE R. MEAD, II
Florida Bar No. 096490
MOORE, HILL & WESTMORELAND
350 West Cedar Street, Suite 100
Post Office Box 13290
Pensacola, FL 32591-3290
(850) 434-3541
(850) 435-7899 (fax)
emead@mhw-law.com
hmalone@mhw-law.com
*Counsel for Plaintiff*

/s/ *Charles V. Peppler*
CHARLES V. PEPPLER
Deputy County Attorney
Florida Bar No. 239739
Escambia County Attorney's Office
221 Palafox Place, Ste. 430
Pensacola, FL 32502
(850) 595-4970
(850) 595-4979
kcchappell@myescambia.com
kmhill@myescambia.com
Counsel for Defendant

## IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,

    *Plaintiff*,

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

    *Defendant*.

Case No: 2020 CA 00328
Division:

### SECOND AMENDED TOLLING AGREEMENT

  The parties to this action by their undersigned counsel hereby agree that the Defendant's duty to answer or otherwise respond to the Complaint herein shall be tolled until October 30, 2020 unless otherwise extended by the parties.

  Dated this 8th day of October, 2020.

*/s/ George R. Mead, II*
GEORGE R. MEAD, II
Florida Bar No. 096490
MOORE, HILL & WESTMORELAND
350 West Cedar Street, Suite 100
Post Office Box 13290
Pensacola, FL 32591-3290
(850) 434-3541
(850) 435-7899 (fax)
emead@mhw-law.com
hmalone@mhw-law.com
*Counsel for Plaintiff*

*/s/ Charles V. Peppler*
CHARLES V. PEPPLER
Deputy County Attorney
Florida Bar No. 239739
Escambia County Attorney's Office
221 Palafox Place, Ste. 430
Pensacola, FL 32502
(850) 595-4970
(850) 595-4979
kcchappell@myescambia.com
kmhill@myescambia.com
Counsel for Defendant

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC

      Plaintiff,              Case No. 2020 CA 000328
                                  Division: N

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

      Defendant.
_____

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant, Escambia County Board of County Commissioners (County), answers the allegations of the complaint, according to its numbered paragraphs, and alleges:

## PARTIES AND JURISDICTION

1. Admitted.

2. It is admitted that County is a political subdivision of the State of Florida.

3. Admitted for jurisdictional purposes only.

4. Admitted.

## FACTUAL BACKGROUND

5. County is without knowledge as to whether Eager Beaver is a land management company, and, therefore, it is denied. It is admitted that

Eager Beaver provides services for profit relating to trees, including trimming, removal, and stump grinding.

6.     As to the allegations contained in the first sentence, County is without knowledge as to the intent of Eager Beaver when it purchased the 70.52-acre real property located in Escambia County and, therefore, this allegation is denied.  As to the allegations of the second sentence, these are admitted.

7.     The allegations contained in the first sentence are denied.  As to the allegations of the second and third sentences, County admits that the ordinances cited contain language as quoted.  As to the allegations of the fourth sentence, County admits that FDEP issued a permit entitled "General Permit for a Yard Trash Disposal Facility."  It is denied that the general permit uses the term "yard waste recycling."  The remaining allegations of the fourth sentence are denied.

8.     It is admitted that a site plan development order dated August 24, 2016, was issued for a Yard Trash Processing Facility to be reviewed by the Board of County Commissioners.

9.     Admitted.

10.    It is admitted that the Board of County Commissioners conducted a quasi-judicial public hearing on whether to grant a conditional

use.  The remaining allegations are denied as superfluous to the issues in this case.

11.  Admitted.

12.  Admitted.

13.  Admitted.

14.  Admitted.

15.  Denied.

16.  Denied.

17.  Denied.

18.  The allegations in the first sentence are admitted.  The remaining allegations contained in the second and third sentences are denied.

19.  Denied.

20.  As to the allegations in the first sentence, County is without knowledge and, therefore, they are denied.  The allegations of the second sentence are denied.

21.  Denied.

22.  Admitted.

23.  The allegations of the first sentence are admitted.  The allegations of the second sentence are admitted that the characterization

3

by County of Eager Beaver's permit was a simple error, but the allegations are denied that there was any intention by County to create animosity in the community through the improper designation of Eager Beaver's operations as a concrete recycling facility.  The allegations of the third sentence are denied.

## COUNT I
## DECLARATORY JUDGMENT AS TO PERMITTING

24.    County realleges its answer to paragraphs 1-23 and incorporate them by reference.

25.    Admitted for jurisdictional purposes only.

26.    Denied.

27.    Denied.

28.    Denied.

29.    Denied.

## FIRST AFFIRMATIVE DEFENSE

County is entitled to enforce its own ordinances to protect the public health, safety and welfare of its citizens.  As Eager Beaver is operating a facility more closely resembling a solid waste management facility than a construction and demolition debris landfill, whereby yard trash is not being buried, but is being recycled and shipped offsite, the best definition for its operations is that contained in Section 82-101(a), Code of County

4

Ordinances, which governs solid waste management and requires an annual renewal of a solid waste management permit.

## SECOND AFFIRMATIVE DEFENSE

The County's current permit for solid waste management applicable to Eager Beaver expires on December 11, 2020.  Eager Beaver has not sought renewal of the solid waste management permit.  Accordingly, this suit for declaratory relief is both premature and seeks an advisory opinion before Eager Beaver loses any privileges to operate under a solid waste management permit.

## THIRD AFFIRMATIVE DEFENSE

Eager Beaver can never qualify to operate a C&DD facility or landfill, because its operations encompass only 70.52 acres. Section 82-226(1), Code of County Ordinances, requires that a real property site for a C&DD facility shall be at least 100 acres.


WHEREFORE, County demands that the complaint be dismissed with prejudice and that it be awarded taxable costs.

Respectfully submitted,

Escambia County Attorney's Office
221 Palafox Place, Suite 430
Pensacola, Florida 32502
(850) 595-4970

(850) 595-4979 - Facsimile

/s/ Charles V. Peppler
By: Charles V. Peppler
Deputy County Attorney
Florida Bar No.: 239739
Attorneys for Defendant Escambia County, FL
cpeppler@co.escambia.fl.us
kcchappell@co.escambia.fl.us
sposborne@co.escambia.fl.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of November 2020, the foregoing document was furnished by E-Service to: George R. Mead, II, More, Hill, Westmoreland, 350 West Cedar St., Ste. 100, Pensacola, FL 32502 at emead@mhw-law.com and hmalone@mhw-law.com.

/s/ Charles V. Peppler
By: Charles V. Peppler, Deputy County Attorney
Florida Bar No.: 239739

6

## IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## IN AND FOR ESCAMBIA COUNTY, FLORIDA

**EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,**
               **Plaintiff,**

**v.**

**ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,**
               **Defendant.**

_____/    **Case No.**     **2020 CA 000328, Division N**

### <u>ORDER OF RECUSAL</u>

The undersigned Circuit Judge, having determined that he is disqualified from consideration of the above styled cause, does hereby recuse himself from further participation in this cause.  It is, hereby

**ORDERED and ADJUDGED** that in accordance with the Administrative Order regarding reassignment of cases, the Escambia County Clerk of Court is directed to reassign the above case to the Honorable Jan Shackelford, Division "E".

This Order affects no scheduled activities between the parties ordered by the Court previously.  However, any pending hearings are **<u>cancelled</u>** and will need to be rescheduled and coordinated with the newly assigned judge.

**DONE AND ORDERED** in Chambers in Pensacola, Escambia County, Florida.

eSigned by CIRCUIT COURT JUDGE GARY L. BERGOSH<br>
on 01/15/2021 17:02:11 u0M4Y0QV<br>
_____<br>
CIRCUIT COURT JUDGE

Copies to:
Honorable Jan Shackelford, Reassigned Judge
George R. Mead, II, Esquire
Charles V. Peppler, Esquire

Case 3:21-cv-00515-TKW-EMT   Document 2-1   Filed 03/25/21   Page 22 of 94

## IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,

          *Plaintiff,*

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

          *Defendant.*

Case No: 2020 CA 00328
Division:

## NOTICE OF CASE MANAGEMENT CONFERENCE

      PLEASE TAKE NOTICE that the Case Management Conference in this action is now scheduled for Tuesday, February 23, 2021, at 1:30 p.m. before the Honorable Jan Shackelford, Circuit Judge, by videoconference per the Judge's instructions below.

      Thirty (30) minutes have been reserved for the Case Management Conference.

**You may join this meeting from a Computer, Smartphone, or Tablet. You will be prompted upon joining the meeting as to which device you want to use for audio. You may either select "Join with computer audio" to use the built-in microphone and speakers on your device, or you may select "phone call" and dial in on a separate telephone for audio.**

**If your video does not automatically turn on upon joining the meeting, you may need to click in the bottom left corner to "Start Video."**

**Please use the highlighted link below to connect to the Zoom meeting. You may join the meeting anytime beforehand to test your speakers and microphone using the built-in test feature. Please be advised if the parties want the hearing recorded, a court reporter should be included on the event and given instructions on how to participate.**

**\*Please remember to mute your microphone when you are not speaking.\***

**\*Please connect to the Zoom meeting 10 minutes before the hearing begins.\***

Join Zoom Meeting from Computer
https://zoom.us/j/7623753843

Meeting ID: 762 375 3843

Dial-in from telephone
  +1 312 626 6799 US (Primary)
  +1 929 205 6099 US (Secondary)

Meeting ID: 762 375 3843

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact:**

**Court Administration, ADA Liaison**
**Escambia County**
**190 Governmental Center, 5th Floor**
**Pensacola, FL 32502**
**Phone (850) 595-4400 Fax (850) 595-0360**
**ADA.Escambia@flcourts1.gov**

**at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

Respectfully submitted,

/s/ *George R. Mead, II*
GEORGE R. MEAD, II
Florida Bar No. 096490
MOORE, HILL & WESTMORELAND
350 West Cedar Street, Suite 100
Post Office Box 13290
Pensacola, FL 32591-3290
(850) 434-3541
(850) 435-7899 (fax)
emead@mhw-law.com
hmalone@mhw-law.com
Counsel for Plaintiff

2

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY that this document has been filed via the Florida Courts E-Filing Portal for electronic distribution to counsel of record and furnished to the following parties by email on January 22, 2021:

Charles V. Peppler, Esq., Deputy County Attorney
221 Palafox Place, Suite 430
Pensacola, FL  32502
<u>cpeppler@co.escambia.fl.us</u>
<u>kcchappell@co.escambia.fl.us</u>
<u>sposborne@co.escambia.fl.us</u>
<u>aespinosa@co.escambia.fl.us</u>

/s/George R. Mead, II
**GEORGE R. MEAD, II**

**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,

         *Plaintiff*,

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

         *Defendant*.

Case No: 2020 CA 00328
Division:

## JOINT STIPULATION FOR PLAINTIFF TO FILE
## AMENDED COMPLAINT

Plaintiff, EAGER BEAVER PROFESSIONAL TREE CARE, LLC, and Defendant, ESCAM-

BIA COUNTY BOARD OF COUNTY COMMISSIONERS, by and through their undersigned counsel,

hereby stipulate to allow Plaintiff to file its Amended Complaint.

| | |
|---|---|
| /s/ *George R. Mead, II* | /s/ *Charles V. Peppler* |
| GEORGE R. MEAD, II | CHARLES V. PEPPLER |
| Florida Bar No. 096490 | Deputy County Attorney |
| MOORE, HILL & WESTMORELAND | Florida Bar No. 239739 |
| 350 West Cedar Street, Suite 100 | Escambia County Attorney's Office |
| Post Office Box 13290 | 221 Palafox Place, Ste. 430 |
| Pensacola, FL 32591-3290 | Pensacola, FL 32502 |
| (850) 434-3541 | (850) 595-4970 |
| (850) 435-7899 (fax) | (850) 595-4979 |
| emead@mhw-law.com | cpeppler@co.escambia.fl.us |
| hmalone@mhw-law.com | kcchappell@co.escambia.fl.us |
| *Counsel for Plaintiff* | sposborne@co.escambia.fl.us |
| | aespinosa@co.escambia.fl.us |
| | Counsel for Defendant |

## CERTIFICATE OF SERVICE

I CERTIFY that this document has been filed via the Florida Courts E-Filing Portal for
electronic distribution to counsel of record and furnished to the following parties by email on
February 24, 2021:

Charles V. Peppler, Esq., Deputy County Attorney
221 Palafox Place, Suite 430
Pensacola, FL  32502
cpeppler@co.escambia.fl.us
kcchappell@co.escambia.fl.us
sposborne@co.escambia.fl.us
aespinosa@co.escambia.fl.us

/s/George R. Mead, II

**GEORGE R. MEAD, II**

Case 3:21-cv-00515-TKW-EMT   Document 2-1   Filed 03/25/21   Page 27 of 94

## IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,

    *Plaintiff*,

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

    *Defendant*.

Case No: 2020 CA 00328
Division:

## ORDER GRANTING JOINT STIPULATION FOR
## PLAINTIFF TO FILE AMENDED COMPLAINT

  The Court upon consideration of the parties *Joint Stipulation for Plaintiff to File Amended Complaint*, took under advisement the determination as to the *Joint Stipulation for Plaintiff to File Amended Complaint*. The Court, being fully advised in the premises, hereby finds as follows:

  It is therefore ORDERED that the Plaintiff is given leave to file their Amended Complaint within ten (10) days of the entry of this Order. Defendant shall have thirty (30) days to respond to the amended complaint from the date of its filing.

  DONE and ORDERED this _____ day of February, 2021, in Pensacola, Florida.

eSigned by CIRCUIT JUDGE JAN SHACKELFORD in 2020 CA 000328
on 02/25/2021 13:54:22 ITZV901

JAN SHACKELFORD
CIRCUIT COURT JUDGE

Conformed Copies To:
GEORGE R. MEAD, II emead@mhw-law.com; hmalone@mhw-law.com
CHARLES V. PEPPLER kcchappell@myescambia.com; kmhill@myescambia.com; sposborne@co.escambia.fl.us; aespinosa@co.escambia.fl.us

# IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,

               *Plaintiff*,

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

               *Defendant*.

Case No: 2020 CA 00328
Division: K

## AMENDED COMPLAINT

Plaintiff, Eager Beaver Professional Tree Care, LLC (Eager Beaver), sues Defendant, Escambia County Board of County Commissioners (BCC), and states:

### Parties and Jurisdiction

1. Eager Beaver is a Florida limited liability company with its principal place of business in Gulf Breeze, Florida.

2. The BCC is a Florida county governing body located in, and governing, Escambia County, Florida.

3. This Court has jurisdiction over the subject matter of this action because it is an action for both declaratory relief and damages in excess of $30,000.

4. This Court is a proper venue because the BCC is located in Escambia County.

### Factual Background

5. Eager Beaver is a land management company that provides tree services—such as trimming, removal, and stump grinding.

6. With the intent of creating a yard vegetation waste recycling facility, Eager Beaver purchased a 70.52 acre property in Escambia County. The property was zoned as to allow the installation of a recycling facility as a conditional use.

7.   Specifically, Eager Beaver's contemplated activities were, and are, governed by the portion of the Escambia County Code of Ordinances regarding construction and demolition debris (C&DD). The C&DD section of the code provides that it encompasses "[s]upplemental regulation of the operation and disposal of construction and demolition disposal and recycling facilities." Escambia County, Fla., Code of Ordinances § 82-224(2). The code further provides that C&DD includes "tree remains, trees, and other vegetative matter," which is defined as "yard waste recycling." *Id.* § 82-225. Eager Beaver's concurrent permit with the Florida Department of Environmental Protection is only for "yard waste recycling," which is the only scope of operations it has applied for to the BCC.

8.   While section 82-226(1)(a) of the code provides that, for C&DD facilities, the "[m]inimum size of the real property site shall be 100 acres," section 82-226(4)(a) provides that for land clearing disposal facilities, which are a subset of C&DD facilities, the "[m]aximum size of [the] real property shall be 25 acers." Eager Beaver's operation is land clearing disposal facility, described by the code as "a facility on a real property site no larger than 25 acres whose primary purpose is to hold vegetative land clearing debris." *Id.* § 82-225. Eager Beaver was permitted to operate on only 10 acres. *See* **EXHIBIT A,** constituting the permit application conditions.

9.   On August 24, 2016, the development order for the recycling facility was approved, contingent upon the review of the recycling conditional use permit by the BCC.

10. The nature of that review was governed by the land development code, which provides: "If the reviewing board finds from the record of the hearing that the applicant has presented competent substantial evidence proving the required conditions, the board *shall* grant a conditional use." Escambia County, Fla. Land Development Code § 2-6.4(c)(4)(a) (emphasis added).

2

11. The BCC review was delayed despite objection by Eager Beaver. On December 8, 2016, the BCC held a quasi-judicial public hearing on the issue. Eager Beaver submitted documentary evidence on each condition for the requested use. However, the BCC gave Eager Beaver only six minutes to present its case, and then, without making any findings, declined to issue a permit.

12. In response, Eager Beaver filed a petition for writ of certiorari with the Escambia County Circuit Court.

13. The circuit court granted Eager Beaver's petition. In doing so, the court observed that providing Eager Beaver—over objection—with only six minutes to present its case "cannot qualify as procedural due process." The court further observed that Eager Beaver's evidentiary submission had made the requisite showing, and remanded with instructions the permit should issue and no further hearing was lawfully authorized.

14. Subsequently, the BCC filed its own petition for writ of certiorari with the First District Court of Appeal.

15. The First District Court of Appeal denied the BCC's petition without opinion. *Escambia Cty. Bd. of Cty. Comm'rs v. Eager Beaver, LLC*, 254 So. 3d 589 (Mem) (Fla. 1st DCA 2018).

16. The BCC was then forced to issue Eager Beaver a permit. However, undeterred by the rulings against it, the BCC has since attempted to reform the terms of Eager Beaver's permit by issuing a different permit more restrictive than the one it had applied for and had adjudicated.

17. Rather than issue the proper permit for "yard waste recycling," under section 82-228(4) of the Escambia County Code, with its proper five-year renewal period, the BCC issued a "solid waste permit" under section 82-103(6-7), which covers landfills, which Eager Beaver is not properly authorized to operate, and which requires an annual renewal.

3

18. Over written objection and demand that the BCC issue the correct of the form of permit, Eager Beaver operated yard waste recycling under the incorrect form of permit, with an understanding given by the BCC that its code was being revised and that a corrected permit would be forthcoming.

19. Eager Beaver's recycling operations were slated to begin in 2015, but ultimately did not begin until October of 2018—a delay of roughly 40 months.

20. As a result, Eager Beaver has suffered damages in excess of $400,000.

21. No revision to the relevant code has yet occurred. Rather than correct the permit, the BCC has since issued an irregular "extension" to the improper annual permit, which extends the renewal period an additional six months. Moreover, belying the necessity of any "extension," the Escambia County Code, under section 82-228(a)(4), clearly states that all C&DD permits "shall be five years in duration."

22. Eager Beaver has raised this issue to the BCC on numerous occasions, but the BCC has persisted in its efforts to misclassify Eager Beaver's permit in an attempt to subject Eager Beaver to a shorter permitting period.

23. In addition, and because of the BCC's incorrect permit designation, Eager Beaver suffers from adverse public misperception of its operations and business. This misperception results from the BCC's express promulgation of a false statement by placing Eager Beaver under a "landfill" permit, which is contrary to both fact and law.

24. On account of intervening emergency shutdowns, and other pandemic restrictions, the County has periodically continued to extend existing permits including the annual permit at issue, currently extended until approximately June of 2021.

25. Eager Beaver is not requesting a concrete recycling permit, nor has it ever requested such a permit, or operated such a facility.

26. A concrete recycling facility is located on a neighboring property. While the BCC's new characterization of Eager Beaver's permit may be a simple error, it may also be an attempt to direct animosity in the community towards the concrete recycling facility at Eager Beaver. At any rate, this pending hearing underscores Eager Beaver's urgent need for a declaration from this Court.

### COUNT I
### Declaratory Judgment as to Permitting

27. Eager Beaver re-alleges and incorporates the allegations contained in paragraphs 1-26.

28. This is an action for a declaratory judgment pursuant to section 86.011, Florida Statutes, et seq.

29. There is a present controversy as to a state of facts in that the parties dispute the nature of the permit issued to Eager Beaver.

30. Eager Beaver's continued enjoyment of its rights under its permit is dependent on the resolution of this dispute.

31. The parties reasonably have an adverse and antagonistic interest in the subject matter of this dispute.

32. All parties having an interest in this dispute are before this Court and this action is not brought merely to seek legal advice—nor is it brought to answer questions propounded from curiosity.

WHEREFORE, Eager Beaver demands that this honorable Court enter judgment in its favor declaring that its permit is for a five year period under the plain language of the relevant portions of the Escambia County Code of Ordinances.

## COUNT II
### Declaratory Judgment as to Due Process Violations
### (Alternative to Count III)

33. Eager Beaver re-alleges and incorporates the allegations contained in paragraphs 1-26.

34. This is an action for a declaratory judgment pursuant to section 86.011, Florida Statutes, et seq.

35. In *Carey v. Piphus*, the Supreme Court held that, for deprivations of procedural due process, compensatory damages are available upon proof. 435 U.S. 247 (1978).

36. There is no dispute as to whether the circuit court held that the BCC violated Eager Beaver's due process rights—it unequivocally did. This ruling was further upheld on appeal. However, on review by certiorari, the court lacked the power to consider whether Eager Beaver had suffered compensable damages. *See Gulf Oil Realty Co. v. Windhover Ass'n, Inc.*, 403 So. 2d 476, 478 (Fla. 5th DCA 1981) ("after review by certiorari, an appellate court can only quash the lower court order.").

37. Under *Carey*, a party is only entitled to compensatory damages upon proof. Accordingly, there is an actual present and practical need for a declaration as to Eager Beaver's compensable damages as a result of the BCC's actions.

38. Declaratory judgment is appropriate where there is a dispute as to a state of facts "upon which the existence . . . [of a] right does or may depend." § 86.011(2), Fla. Stat. Here, the circuit court unequivocally held that the BCC violated Eager Beaver's due process rights. Further, there is no question that, if that violation caused damages, Eager Beaver has a right to recover those damages. However, there is a dispute as to a state of facts in that the parties disagree as to whether Eager Beaver has suffered compensable damages.

39. Accordingly, there is a present controversy as to Eager Beaver's compensable damages resulting from the BCC's due process violation.

6

40. Eager Beaver's right to compensation for the established violation of due process is dependent on the resolution of this dispute.

41. The parties reasonably have an adverse and antagonistic interest in the subject matter of this dispute.

42. All parties having an interest in this dispute are before this Court and this action is not brought merely to seek legal advice—nor is it brought to answer questions propounded from curiosity.

43. All conditions precedent to this claim have been satisfied or waived.

WHEREFORE, Eager Beaver demands that this honorable Court enter judgment in its favor declaring that it suffered damages caused by the BCC's actions, and awarding those damages so determined as supplemental relief.

### COUNT III
### Procedural due process violation under 42 U.S.C. § 1983
### (Alternative Count)

44. Eager Beaver re-alleges and incorporates the allegations contained in paragraphs 1-26.

45. Eager Beaver was deprived of a constitutionally protected property interest in the recycling permit it sought from the BCC.

46. The BCC's denial of that permit constitutes state action because the BCC is a government entity.

47. As the circuit court already held, the process that BCC provided to Eager Beaver "cannot qualify as procedural due process."

WHEREFORE, Eager Beaver demands that this honorable Court enter judgment in its favor and awarding it compensatory damages, attorney's fees pursuant to 42 U.S.C. § 1988(b), and any other damages which this Court finds just and proper.

Respectfully submitted,

**/s/ *George R. Mead, II*** _____

GEORGE R. MEAD, II
Florida Bar No. 096490
MOORE, HILL & WESTMORELAND
350 West Cedar Street, Suite 100
Post Office Box 13290
Pensacola, FL 32591-3290
(850) 434-3541
(850) 435-7899 (fax)
emead@mhw-law.com
hmalone@mhw-law.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

I CERTIFY that this document has been filed via the Florida Courts E-Filing Portal for electronic distribution to counsel of record and furnished to the following parties by email on February 26, 2021:

Charles V. Peppler, Esq., Deputy County Attorney
221 Palafox Place, Suite 430
Pensacola, FL  32502
cpeppler@co.escambia.fl.us
kcchappell@co.escambia.fl.us
sposborne@co.escambia.fl.us
aespinosa@co.escambia.fl.us

/s/George R. Mead, II _____
**GEORGE R. MEAD, II**

8

# Impact and Operational Analysis
# 2170 Longleaf Drive
# Pensacola, Florida

Revised Aug. 29, 2016

This site is located near the mid-western portion of Escambia County on Longleaf Drive, east of the intersection of Pine Forest Road and Blue Angel Parkway.

Determining whether a particular use of property is or can be compatible with nearby existing or proposed uses generally requires analysis of independent variables such as distances, intensities, sounds, existing area uses, and zoning among others.

The overall site measures some 70 acres while the actual activity area contains approximately 9-10 acres located in the middle of the property as shown on the attached map.

The entire site is currently zoned as HC/LI Heavy Commercial/Light Industrial with a FLUM classification of I-Industrial. According to the attached copy of the zoning narrative, the proposed use as a landscaping waste recycling operation is consistent with the allowed uses cited at LDC Sec. 3-2.11(6)(a) under the classification.

The site contains an existing 7,600sf metal building on septic tank with existing electric and water service to the building. The site has an existing paved roadway connecting the activity area south to Longleaf Drive.

The site has been permitted by the Florida Department of Environmental Protection for use as a green recycling operation.

Truck traffic will have access to and from the site from Longleaf Drive which is classified as a Minor Collector on the Escambia County Functional Highway Classification listing. No residential streets will be used.

The size and scale of the proposed will be centralized on the site as

1/3

EXHIBIT A to Amended Complaint
0026

will serve as a sound attenuation structure dampening and deflecting sounds in and upward direction. With processing taking place as depicted on the aerial, the nearest residential structures are located some 700 feet east of this location. As such, it is not anticipated that the activity on site will generate unreasonable noise affecting adjacent residential uses.

There are numerous similar activities within Escambia County where the HC/LI zoning classification is found adjacent to residential areas such as Brown Marine boatyard on Bayou Chico, Ellyson Field on Davis Highway, Patti Shipyard off Navy Boulevard, Brown Helicopter on Aileron Avenue, and Westinghouse on Scenic Highway. Each of these examples have residentially zone property adjacent as shown on the attached location maps. All have apparently exited next to one another without unreasonable noise, traffic, objectionable odors, dust, or other potential nuisances or hazards. The design and

Existing landscaping along the easterly property includes an extensive stand of trees and understory which will not be disturbed. This existing vegetation together with the 20' earth wall and the distance between the operation site and existing residences should again be sufficient to assure use compatibility.

The activity area is relatively flat with a slight existing westerly grade toward a wetland area. Use of the site will not produce any erosion to either on site or adjacent land owners. This wetland area is not within the activity area and will not be disturbed by operations. Storage of materials will be adjacent to the grinding equipment and once processed, will be trucked to end users.

The operation of site will likely be Monday- Friday from 7:00am to 5:00pm while Saturday hours will be 8:00am to 2:00pm.  The site is currently fenced and will be locked and secured after hours.

The adopted Escambia County Land Development Code defines compatibility as follows:

*Compatible. A condition in which land uses, activities or conditions*

Landscape materials brought into the site will be inspected prior to unloading to assure acceptability and compatibility with approved operational rules.

Sound characteristics of the shredding machine can measure 85dbi while next to the machine. This is produced with grinder teeth shredding wood and plant type material as opposed to grinder teeth shredding metal or concrete materials. Sound characteristics measured over 700 feet from the source should be comparable to that produced by a lawn mower.

The adopted Escambia County Land Development Code defines compatibility as follows:

*Compatible. A condition in which land uses, activities or condition can coexist in relative proximity to each other in a stable fashion over time such that no use, activity, or condition is unduly negatively impacted directly or indirectly by another use, activity, or condition.*

Given the proximity/distance between the operational equipment site within the activity area and distance to adjacent residences it is anticipated that the proposed use as a green landscape grinding and processing operation will not unduly impact other surrounding uses.

3/3

# Wetlands

- The activity area is relatively flat with a slight existing westerly grade.

- Use of the site will not produce any erosion to either on site or adjacent land owners.

- The wetlands area is not within the activity area and will not be disturbed by recycling operations.

**IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC

       Plaintiff,

v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

       Defendant.

Case No. 2020 CA 000328
Division: N

_____

**MOTION TO DISMISS COUNT III WITH PREJUDICE**

Defendant, Escambia County, Florida (County), a political subdivision of the State of Florida, moves to dismiss Count III of the Amended Complaint with prejudice, on the following grounds:

**INTRODUCTION**

Plaintiff, Eager Beaver Professional Tree Care, LLC (Eager Beaver), has filed a three-count complaint against the County alleging in Counts I and II, claims for a declaratory judgment as to permitting (Count I) and due process violations (Count II), all pursuant to Section 86.011, Fla. Stat. (2020). In Count III, Eager Beaver claims that it was deprived of a constitutionally-protected property interest in a recycling permit and, therefore, is entitled to damages and attorney's fees under 42 U.S.C. §§

1983 and 1988(b).  For the reasons following, Count III does not state a claim for relief and should be dismissed with prejudice.

## II. PERTINENT ALLEGATIONS OF AMENDED COMPLAINT

Eager Beaver is a Florida limited liability company, with its principal place of business in Gulf Breeze, Florida. (¶ 1).[1]  Eager Beaver is a land management company that provides services for trimming, removal and grinding of trees. (¶ 5).  With the intent of creating a yard vegetation waste recycling facility, Eager Beaver purchased 70.52 acres in Escambia County, which had been zoned to allow the operation of a recycling facility as a conditional use.  (¶ 6).

Eager Beaver contends that its activities were best governed under Chapter 82, Solid Waste, Escambia County Code of Ordinances as a construction and demolition debris facility (CDDF).   Section 82-224(2), Code of Ordinances,[2] includes a supplemental regulation of CDDF and recycling facilities. Citing to § 82-225, Eager Beaver asserts that a CDDF includes tree remains, trees and vegetative matter and is defined as yard waste recycling.  Eager Beaver acknowledges that a CDDF must comprise

---

[1] The allegations of the Amended Complaint shall be referred to by their paragraph numbers.

[2] All references to Chapter 82 of the code of Ordinances shall be by section number and shall omit "Code of Ordinances" in the citation for the sake of brevity.

of 100 acres or more, but posits that a land-clearing disposal facility (LCDF) is limited to no more than 25 acres. Eager Beaver contends that a LCDF is operated on its site and is no larger than 25 acres, citing § 82-225. Moreover, attached to the Amended Complaint as Exhibit "A," is the permit application conditions under which Eager Beaver was permitted to operate on only 10 acres. (¶¶ 7-8). A development order for "the recycling facility" was approved on August 24, 2016, contingent upon review by the Board of County Commissioners (BCC) to approve the conditional use permit. (¶¶ 9-10). A quasi-judicial hearing was conducted by the BCC on December 8, 2016, to review the application for the conditional use. (¶ 11). The BCC gave Eager Beaver only six minutes to present its case and declined to issue a permit. *Id.*

Eager Beaver then filed a petition for writ of certiorari with the Escambia County Circuit Court, which was granted. The circuit court observed that allowing Eager Beaver only six minutes to present its case "cannot qualify as procedural due process." The circuit court then ordered that Eager Beaver's evidentiary submission required by the Code had been met and remanded with instructions to BCC that the permit should be issued with no further hearing authorized. (¶ 13).

In response, County filed a petition for writ of certiorari with the First District Court of Appeal, which denied County's petition without opinion. (¶¶ 14-15).  Eager Beaver contends that County did not issue the appropriate permit for "yard waste recycling" under § 82-228(4), with a five-year renewal period, but instead, issued a solid waste permit under § 82-103(6) and (7), which covers the operation of landfills and which requires annual renewal. (¶¶ 16-17).   Eager Beaver continued to operate the yard waste recycling facility under the permit issued by County with the understanding that County would revise its Code and issue a corrected permit. (¶ 18). According to Eager Beaver, its recycling operations were slated to begin in 2015, but did not ultimately begin until October of 2018, and thereby suffered damages in excess of $400,000.00. (¶¶ 19-20).

Rather than amend its Code of Ordinances to issue a "correct" permit, County has issued extensions to the annual permit issued to Eager Beaver, which extends renewal for an additional six months. These extensions were in contravention of § 82-228(a)(4), which provides that all CDDF permits shall be five years in duration. (¶ 21).  Despite Eager Beaver raising this issue to the BCC, no action has been taken by the BCC and the one-year annual renewals continue.  Eager Beaver claims that, due to the incorrect permit designation as a landfill, there is a public misperception of

4

its operations and business. (¶ 23).   It acknowledges that the existing permit is extended until June of 2021. (¶ 24).

Under Count III, Eager Beaver attempts to claim a deprivation of procedural due process under 42 U.S. § 1983, because of the denial of a "recycling permit," that it sought from the Board of County Commissioners. (¶¶ 44, 45).  Based on the denial of that permit and the finding by the circuit court that the limitation of presentation of evidence before the BCC of six minutes did not afford it due process, Eager Beaver contends that it is entitled to compensatory damages and attorney's fees under 42 U.S.C. § 1983 and 1988(b). (¶ 47 and Wherefore clause).

### III. STANDARD FOR GRANTING A MOTION TO DISMISS

#### A.  Florida

The Florida Rules of Civil Procedure are patterned very closely after the Federal Rules of Civil Procedure and Florida courts find Federal case law "persuasive influence" in construing them.   Fla. R. Civ. P. 1.010, Author's comment – 1967. The Florida current standard for granting a motion to dismiss is whether a plaintiff can allege a cause of action, when reviewing the four corners of the complaint, and accepting as true all well-pleaded allegations. *Universal Underwriters Insurance Co. v. Body Parts of*

*America, Inc.*, 228 So. 3d 175 (Fla. 1st DCA, 2017); *see also Bair v. City of Clearwater*, 196 So. 3d 577, 584 (Fla. 2d DCA 2016).

### B. Federal Rule 12(b)(6) Standard

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The "plausibility standard" requires a showing of "more than a sheer possibility" that the defendants are liable on the claim. *Id.* at 678. Legal "labels and conclusions," unsupported by factual allegations, will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555). In deciding motions to dismiss, the court considers only the complaint, though this includes any exhibits attached to the complaint and any documents incorporated by reference. *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 & n.7 (11th Cir. 2006). In the same way as the Florida rules, a court accepts the complaint's well-pleaded factual allegations as true and construes them, along with the reasonable inferences they create, in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679; *Crespo v. Coldwell Banker Mortg.*, 599 F. App'x 868, 874 (11th Cir. 2014).

## IV. ARGUMENT

## A. NO VIOLATION OF PROCEDURAL DUE PROCESS OCCURRED BECAUSE THE COUNTY WOULD NOT CHANGE ITS ORDINANCES UPON DEMAND BY EAGER BEAVER.

When governmental action is viewed as legislative in nature, the legislative process in enacting a law, which affects a general class of persons, provides all the procedural due process that is due. *75 Acres, LLC v. Miami-Dade County*, Fla., 338 F.3d 1288, 1294 (11th Cir. 2003) (citing cases and Rotunda & Nowak, *Treatise on Constitutional Law, § 17.8 (3d ed. 1999)).* Furthermore, when an ordinance is of general applicability, then it is a legislative act. The property owner's procedural due process rights are protected by the legislative adoption process. *75 Acres*, 338 F.3d 1288, 1297-1298.

The amended complaint alleges that the County has refused to amend its Code of Ordinances to reflect the appropriate facility that Eager Beaver is claiming to operate. "When government action is 'legislative,' individuals impacted by such action are not entitled to procedural due process beyond that which the legislative process affords them." *Green Cedar, LLC v. Clay County*, Fla. 2012 WL 394657, *6 (MD Fla. Feb. 7, 2012) (citing *75 Acres, LLC v. Miami-Dade County, Fla.*, 338 F.3d 1288, 1294 (11th Cir. 2003). *See also KTK Mining of Virginia, LLC v. City of*

*Selma, AL.*, 984 F. Supp. 2d 1209, 1227—1228, n. 12 (S.D. Ala. 2013) (rejecting City's argument that suspending a building permit was a legislative function as the action taken was based on individualized grounds making it adjudicative)

To help this Court understand the County's ordinances that are in play, a review of them is necessary. Section 82-1, (attached as Exhibit 1) contains definitions pertinent to solid waste management. "Construction and demolition debris" is defined as including steel, concrete, glass, brick resulting from construction and demolition projects. Section 82-1. "Yard trash," includes vegetative matter resulting from landscaping maintenance and includes trees and tree stumps, as well as other land-clearing debris. "Yard waste" does not include trees or tree stumps. A "land-clearing disposal facility" (LCDF) means a facility situated on real property no larger than 25 acres, of which the primary purpose is to hold vegetative land-clearing debris. An LCDF is a facility more narrowly defined than a "disposal facility," which includes a site where solid waste is disposed of by landfilling, incineration, treatment, recovery or recycling. Finally, "solid waste management" includes all aspects of handling solid waste, including collection, transportation, storage, separation and disposal. *Id.*

County has specific requirements concerning its solid waste management and, in particular, CDDFs and LCDFs.   Section 82-226(1) defines the requirements to operate a CDDF.[3] (Attached as Exhibit 2). There must be a minimum size of 100 acres, and a setback of 500 feet of the active areas of the CCDF from the property boundaries. Section 82-226(1) a. and b.   A CCDF is entitled, as is an LCDF, to a permit of five years in duration. Section 82-228(a)(4). (Attached as Exhibit 3).   Eager Beaver is conducting activities on a parcel which is 70.52 acres. (¶ 6). Although not clearly alleged in the amended complaint, Eager Beaver is receiving land-clearing debris, including trees and tree stumps, which is being chipped and grinded for sale outside of the confines of its real property. (Amended Complaint, Exhibit A, 0028).  As Eager Beaver is not holding or disposing of the vegetative matter on site, it is not operating an LCDF, which is limited to no more than 25 acres. § 82-226(4)(a). (Exhibit 2).

County issued a permit based upon Section 82-101(a), (attached as Exhibit 4), as Eager Beaver engaged in solid waste management activity on a commercial basis.  Eager Beaver's operations in processing trees and tree stumps and selling the by-products of grinding and chipping most

---

[3] Denominated as a C&DD facility in the Code.

9

closely resemble a solid waste disposal facility than a CCDF.  Section 82-103(6), governing solid waste management permits, provides for the duration of such a permit as being one-year and available for renewal. (Attached as Exhibit 5).  The ordinance also provides that should the permit be revoked for unsatisfactory performance, an appeal can be taken to the BCC and that the appeal shall proceed according to due process of law. § 82-103(10) (Exhibit 5).

In a twist from the usual procedural due process claim, Eager Beaver is asserting that County's failure to address what Eager Beaver perceived to be a flaw in the permitting process for yard waste recycling is a denial of procedural due process. (¶¶ 21-23, 45).  In an analogous situation involving the enactment of zoning regulations, the violation of state statute in the enactment of zoning laws does not give rise to a claim that the Federal constitution has been violated by the deprivation of procedural due process.  The violation of a state statute mandating certain procedures in the adoption of zoning laws is not the equivalent of a Federal constitutional violation. *See, First Assembly of God of Naples, Florida, Inc. v. Collier County, Fla.*, 20 F.3d 419, 421-422 (11th Cir. 1994) (citing *Harris v. Birmingham Board of Education*, 817 F.2d 1525, 1527-1528 (11th Cir. 1987)).  Eager Beaver is not entitled to a particular set of ordinances or

10

regulations that it contends would be more advantageous to it than the existing scheme.[4]  Procedural due process was afforded to Eager Beaver when the BCC, in its legislative function, adopted these ordinances either before or when Eager Beaver began operating its yard waste recycling facility.

Any attack on these solid waste ordinances would have to be based on substantive due process as County's solid waste ordinances were of general applicability and prospective in nature. *See Greenbriar Village*, 345 F.3d at 1262 (substantive component of due process implicates only fundamental rights implicit in the concept of ordered liberty, citing *McKinney v. Pate*, 20 F.3d 1550, 1556, (11th Cir. 1994) (*en banc*)).  Eager Beaver does not even hint at a deprivation of a fundamental right because of County's interpretation that Eager Beaver's yard waste recycling is more akin to solid waste management than a CDDF.

More perplexing is Eager Beaver's claim that a violation of its procedural due process rights occurred when the circuit court observed that limiting presentation of evidence to six minutes denied procedural due

---

[4] Statutes or ordinances are given an interpretation such that they are valid and constitutional. *Rinker Materials Corp. v. City of North Miami*, 286 So. 2d 552, 555-556 (Fla. 1973) (holding that cement mixing or batching plant was an appropriate use and fell within the definition of a contractor's plant and is consistent with siting in a general, industrial zoning district).

process. (¶¶ 13, 47).   The quasi-judicial hearing before the BCC (an individualized finding) is not the same as an allegation that the BCC would not amend its Code of Ordinances to make its permits for a yard waste recycling facility last five years instead of one.  In order to bring itself within the purview of § 1983, Eager Beaver must allege a statutory scheme or a set of ordinances that gives it a protected property right recognized by State law, the deprivation of which, without procedural due process, would violate the Federal constitution.   The Eleventh Circuit has reviewed a similar claim to that being made by Eager Beaver and has determined that three factors must be considered as to whether a deprivation of procedural due process has been established:

> (1) whether there is enough of a property interest at stake to be deemed 'protectable'; (2) the amount of process that should be due for that protectable right; and (3) the process actually provided, be it before or after the deprivation.

> *Greenbriar Village, LLC v. Mountainbrook, City*, 345 F.3d 1258, 1264 (11th Cir. 2003) (citing case).

In *Greenbriar Village*, the developer (Greenbriar) applied to the City for a land disturbance permit, which the City issued.  Greenbriar obtained the land disturbance permit with the expectation that the property would be rezoned for commercial use.  Greenbriar used the permit to clear the property, remove garbage, remove trees, move earth, and stockpile tons of

rock and fill material over a period of several years.  The City's attorney then informed Greenbriar that despite its expectation that the property would be rezoned for commercial use, the issuance of the permit would not change the zoning from residential use. 345 F.3d at 1260.  Greenbriar then applied for, yet again, a rezoning for commercial use, which was denied.  It challenged the denial in State court, which found that the permit issued by the City authorized the activity on Greenbriar's property and directed the City to rescind the stop work order.  Over a period of three years, Greenbriar then used the permit to improve the land, but no residential use was ever accomplished through the disturbance work and no commercial use had ever been authorized by the City. *Id.* at 1260-1261.

The City then passed an ordinance which provided that all permits issued before a certain date would expire, automatically, thirty days after the effective date of the ordinance, which, as admitted by the City, had been adopted to curtail the activities of Greenbriar, because it had a non-expiring land disturbance permit.  Despite negotiations with the City, the permit expired by the terms of the ordinance and no further work was performed by Greenbriar on the property. *Id.* at 1261-1262.  Greenbriar contended at a bench trial before the district court that the revocation of the

permit by the ordinance deprived it of procedural due process. The district court agreed, and the City appealed. *Id.* at 1262.

The Eleventh Circuit addressed the first factor as to whether Greenbriar held a protectable property right in the first instance. *Id.* at 1265. Greenbriar had advanced the theory that a property right had been derived from the City's error in creating a gap in its code, which allowed it to issue an open-ended, land disturbance permit and the City's failure to halt the exploitation of that gap in the code's wording, together with Greenbriar's gamble in proceeding with land-clearing in the hopes of rezoning the property to commercial use. In other words, a detrimental reliance argument was advanced. *Id.* However, the court held that because there was reasonable debate over the meaning of the City's ordinances, which amounted to uncertainty as to whether the land disturbance permit issued to Greenbriar could be used to develop a detrimental reliance interest in the permit, this uncertainty was fatal to the existence of a property right, rendering it incapable of being recognized as a Federally protected property right under § 1983. *Id.* at 1266-1267.

Here, Eager Beaver is making a similar contorted argument that was made by the landowner in *Greenbriar Village* in asserting deprivation of procedural due process.    Its interpretation of the County ordinances

defining a solid waste disposal facility and defining a CDDF is contrary to County's interpretation giving rise to the same uncertainty and debate as recognized in *Greenbriar Village*. Moreover, Eager Beaver's interpretation of the Code sections cited by it cannot be deemed a protectable property interest when no state court, nor the BCC, ever recognized the type of five-year permit that Eager Beaver was seeking as being possible under the wording of Code of Ordinances. Eager Beaver does not dispute that it needs 100 acres to operate a CDDF. In fact, there are no allegations that the BCC or any County employee ever agreed with Eager Beaver's interpretation that its yard waste recycling facility, which it contends is limited to 10 acres, deserved the same treatment as a CDDF allowing it to have a five-year permit. This debatable assertion by Eager Beaver does not lend itself to a protectable property right.

Applying the second and third prongs of procedural due process analysis to Eager Beaver's allegations, this Court will come to the same conclusion as the Eleventh Circuit in *Flagship Lake County Development Number 5, LLC v. City of Mascotte, Fla.*, 559 Fed. App'x 811, 814-815 (11th Cir., March 13, 2014), in which an ordinance to rezone was voted down. The court in *Flagship Lake* rejected an argument of denial of procedural due process because adequate state remedies existed to

15

contest the denial of the rezoning. The court affirmed dismissal based on a motion to dismiss.  There, the landowner wanted to rezone 245 acres to allow the construction of waste disposal and waste management facilities, including recycling facilities, all the while preserving wetlands habitat areas. The landowner (Flagship) alleged that the hearing on the rezoning was conducted in a manner that "was an extremely emotional, heated and unwieldy affair." 559 Fed. App'x at 812-813.  Flagship further contended that while it presented expert witness testimony, the opponents to the City ordinance presented argumentative and unsubstantiated arguments and opinions about fears concerning odors, animals, and other environmental degradation. *Id.*  When the City Council denied the enactment of the ordinance, Flagship asserted its rights to procedural due process had been violated.  The Court noted that Flagship had the opportunity to challenge the denial of the ordinance under the Florida Administrative Procedures Act, § 120.68, Fla. Stat., but did not.  In addition, Flagship did not pursue State remedies to cure the alleged procedural irregularities that took place during the hearing on the City's ordinance. 559 Fed. App'x at 815.

Unlike the landowner in *Flagship Lake*, Eager Beaver took full advantage of its state remedies by way of certiorari to overturn denial of its permit through the circuit court.  Judge Shackelford's opinion in granting

16

certiorari makes clear that the lack of procedural due process in limiting Eager Beaver's case to six minutes violated Florida law, not the Federal constitution. (A copy of her opinion is attached as Exhibit 6).[5]  It also successfully defended second tier certiorari review brought by County in the First District Court of Appeal.   Accordingly, Eager Beaver has successfully exercised adequate state remedies and obtained a permit to operate a yard waste recycling facility.  Although Eager Beaver is unhappy with the type and duration of permit that it received, it was never deprived of procedural due process either legislatively or at the adjudicative level. Eager Beaver concedes that it has a permit under which it can operate through June of 2021. (¶ 24).  There are no allegations that its permit will not be renewed nor extended.  If the permit is revoked, it has the right to appeal the decision to the BCC in which a due process hearing will be convened. § 82-103(10).

Eager Beaver obliquely makes the argument in the Amended Complaint that there was a delay caused by the County's refusal to issue

---

[5] Although Judge Shackelford's opinion is not attached to the Amended Complaint, this Court may consider the entire document, if it is authentic and undisputed and central to Plaintiff's claim. *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir.). *See* also *Bryant v. Avado Brands, Inc.*, 187 F. 3d 1271, 1279-1280 (11th Cir. 1999) (public records which are equally available to the parties will be judicially noticed and considered on a motion to dismiss).

the correct form of permit under its Code of Ordinances, but rather issued a "solid waste permit" under § 82-103(6-7), which Eager Beaver contends would apply only to landfills. This delay caused Eager Beaver to suffer $400,000.00 in damages. (¶¶ 16-20). The County continues to fail to revise its Code of Ordinances such that it only extends the permits for an additional six months and continues to mis-characterize the permit that it did issue to Eager Beaver. (¶¶ 21-22). These allegations, even if taken as true, do not save Eager Beaver's case from dismissal.

In *O'Neal Homes, Inc. v. City of Orange Beach*, 2008 WL 2163919 (SD. Ala., May 14, 2008), the district court was presented with a similar argument by landowners who wished to construct duplexes under a zoning ordinance that did not impose any setback or lot width restrictions. 2008 WL 2163919 at *3. However, the City amended its ordinances to restrict the building of duplexes, which City Council members were under the impression would be effective on January 1, 2006. *Id.* at *5. However, the amending zoning ordinance actually became effective much earlier in November 2005. The O'Neals applied for building permits on their three lots to build the duplexes under the old ordinance on December 29, 2005. They were issued permits in July and August 2006. Eventually, the City issued a stop-work order, which the O'Neals appealed by requesting

variances before the Board of Adjustment, but those were denied. *Id.* at *5-6. The O'Neals then filed suit against the City claiming multiple counts, one of which included a procedural due process violation. *Id.* at *1.

The district court discussed the elements needed to establish a procedural due process claim and cited to *Greenbriar Village*, 345 F.3d at 1264 for the three-prong test. *Id* at *10. Reviewing case law considering claimed violations of procedural due process rights, the district court cited with approval, an opinion from the Seventh Circuit in *River Park, Inc. v. City of Highland Park*, 23 F.3d 164 (7th Cir. 1994), in which the plaintiff claimed that the City of Highland Park "dawdled" on an application to rezone a piece of property for so long that it caused it to go bankrupt. The plaintiff sued for violation of due process under the Fourteenth Amendment. *Id.* at *11. Quoting from *River Park, Inc.*, that "failure to implement state law violates that state law, not the constitution . . ."[6], the district court observed that the failure to follow statutory notice procedures by the City of Orange Beach and a typographical error in the effective date of the rezoning amendment would not support a claim of violation of procedural due process rights. *Id.* at *12. Lastly, the district court held that the denial of subsequent requests for variances to continue the construction of their

---

[6] *Id.* at *11.

duplexes gave them a certain amount of due process which has not been shown to be violative of federal procedural due process. *Id.* at *13.

Turning back to the Amended Complaint and taking its allegations as true, as this Court must do at this state of the litigation, it is plain that any delay in implementing an ordinance to allow Eager Beaver to conduct recycling operations under a five-year permit does not violate the Federal constitution.   Unlike the plaintiffs in *O'Neal Homes*, Eager Beaver was successful in obtaining a permit to operate its recycling facility through the pursuit of state court remedies.   It was given a one-year annual permit to operate its recycling facility.   One can argue that a five-year permit is more valuable than a one-year permit subject to renewal.   But, federal due process rights do not repair an economic engine set up by the state or, here, County.   They are calculated to provide compensation when a protectable property right is taken or impaired and where adequate state remedies are unavailable.  Eager Beaver's federal due process rights have neither been impaired nor violated, as it received all the due process to which it was entitled either legislatively or through the adjudicative process.

### B. NO FACTS HAVE BEEN ALLEGED THAT THERE IS A POLICY OR PRACTICE TO DEPRIVE EAGER BEAVER OF ANY FEDERAL CONSTITUTIONAL RIGHTS.

There are no allegations of ultimate fact that County had a policy, custom or practice to deprive property owners, including Eager Beaver, of procedural due process rights, nor are there any allegations that a public official with final policy-making or that a subordinate official's decision was adopted by someone with final policy-making authority deprived Eager Beaver of its civil rights without procedural due process so as to bring Escambia County within the purview of 42 U.S.C. Section 1983. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Hoefling v. City of Miami*, 811 F.3d 1271 (11th Cir. 2016). These requirements apply irrespective of whether the plaintiff seeks monetary relief or prospective relief such as an injunction or a declaratory judgment. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 38-39 (2010).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality . . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999) (*quoting Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)). Eager Beaver must show

that the county policy or custom was the "'moving force,'" *City of Canton, Ohio v. Harris*, 489 U.S. at 378, 389 (1989) (*quoting Monell*, 436 U.S. at 694, and *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)), that "actually caused" the alleged constitutional violation. *McElligott v. Foley*, 182 F.3d 1248, 1259 (11th Cir. 1999); *Young v. City of Augusta, GA.*, 59 F.3d 1160, 1171 (11th Cir. 1995).

To establish a county policy, a plaintiff may identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. *Glech v. Clayton Cnty.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (*citing Monell*, 436 U.S. at 690-91, 694; *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). With respect to the latter option, a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy "if the municipality tacitly authorizes these actions or displays deliberate indifference" toward the misconduct. *Griffin*, *supra* (citing *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)).

Even assuming that there has been a violation of its procedural due process rights through the issuance of a solid waste permit for a one-year period of time, and its extension through June of 2021, Eager Beaver fails

to allege any plausible, ultimate facts that County had a policy or practice to deny five-year permits to landowners or operators who operate yard waste recycling facilities and relegate them to an annual renewal process as a solid waste management facility.

Nor, are there any allegations that a subordinate official's decision was adopted by someone with final policy-making authority who was seeking to force Eager Beaver out of business through the issuance of an annually renewing solid waste management permit or to make its economic future untenable because of the annual renewal permitting process. Eager Beaver has not alleged, nor could it, that Eager Beaver's solid waste management permit has ever been denied by County as a matter of policy or practice so as to deprive Eager Beaver or any operator of yard waste recycling of its procedural due process rights in violation of the Federal constitution.

## CONCLUSION

Count III of the Amended Complaint must be dismissed with prejudice, as Eager Beaver's federal procedural due process rights were not violated by the issuance of a solid waste management permit. Further, no policy or practice has been shown to deprive Eager Beaver of its federal

procedural due process rights to bring this claim within the protections of 42

U.S.C. § 1983.

Respectfully submitted,

Escambia County Attorney's Office
221 Palafox Place, Suite 430
Pensacola, Florida 32502
(850) 595-4970
(850) 595-4979 - Facsimile

/s/ Charles V. Peppler
By: Charles V. Peppler
Deputy County Attorney
Florida Bar No.: 239739
Attorneys for Defendant Escambia County, FL
cpeppler@co.escambia.fl.us
kcchappell@co.escambia.fl.us
sposborne@co.escambia.fl.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of March 2021, the
foregoing document was furnished by E-Service to: George R. Mead, II,
More, Hill, Westmoreland, 350 West Cedar St., Ste. 100, Pensacola, FL
32502 at emead@mhw-law.com and hmalone@mhw-law.com.

/s/ Charles V. Peppler
By: Charles V. Peppler, Deputy County Attorney
Florida Bar No.: 239739



Sec. 82-1. - Definitions.

The following words, phrases, or terms as used in this chapter, unless the context indicates otherwise, shall have the following meanings:

*Abandoned property* means wrecked or derelict property having no value other than nominal salvage value, if any, which has been left abandoned and unprotected from the elements and shall include wrecked, inoperative or partially dismantled motor vehicles, trailers, boats, machinery, refrigerators, washing machines, plumbing fixtures, and other similar articles which have no value other than nominal salvage value, if any; and is in a condition violative of F.S. §§ 705.101—705.103.

*Administrative department* means the department charged by the director with the administrative management of this chapter.

*Board* means the board of county commissioners.

*Bulky waste* means items whose large size precludes or complicates their handling by normal collection, processing, or disposal methods.

*Bundle* means a package containing rubbish only, weighing not over 50 pounds and not exceeding four feet in its longest dimension, securely tied with cord or rope of sufficient strength to permit lifting and carrying of the full weight thereof without spillage or scattering.

*Certificate of need* means written approval by the board for the director to issue a permit to operate in accordance with this chapter.

*Collection* means the act of removing solid waste from the source of general to the point of disposal.

*Collector* means any person, firm, partnership, or corporation permitted by the director or franchised by the board to engage in the transportation or collection of solid waste. May require certificate of need.

*Commercial solid waste* means solid waste generated by stores, offices, and other activities which do not actually manufacture a product.

*Composting* means controlled process of degrading organic matter by microorganisms resulting in a humus material which is useful as soil conditioner.

*Composting facility* means a facility where organic matter is processed by natural or mechanical means to aid the microbial decomposition of the organic matter commercially. Processing may include simple exposure resulting in natural decay or physically turning, windrowing, aerating or other mechanical reduction of the organic matter.

*Construction and demolition debris* means nonhazardous material generally considered not to be water soluble including, but not limited to, steel, concrete, glass, brick, asphalt, roofing material or lumber from a construction or demolition project. Contamination of construction and demolition debris with any amount of other types of solid waste will cause it to be classified as other than construction and demolition debris.

*Dead animals* means animals that have died from any cause without proper burial, except those slaughtered for human consumption.

*Director* means the county administrator, appointed by the board of county commissioners, or his designated agent. The director is responsible for the administrative management of this chapter.

*Disposal facility* means the site where solid waste is disposed of, whether by sanitary landfilling, incineration, treatment, recovery, or recycling.

*Enforcement agency* means the agency or agencies of this county, or of this state, charged with the enforcement of those aspects of this chapter related to the protection of the public safety, health, welfare and environment.

*Garbage* means materials resulting from the preparation, cooking and serving of food; market wastes, trimmings and other discarded matter from meat or produce, including containers in which packaged, and such other refuse as may be defined by the board.

*Hazardous wastes* means materials or combinations of materials which require special management techniques because of their acute and/or chronic effects on air and water quality; on fish, wildlife, or other biota; or on the health and welfare of the public. These materials include, but are not limited to, volatile, chemical, biological, explosive, flammable, radioactive and toxic materials.

*Health officer* means the director of the county health department or his authorized agents.

*Imminent hazard* means a situation existing when solid waste creates an immediate and substantial danger to human health, safety or welfare, public or private property, or the environment.

*Incineration* means a controlled process by which solid, liquid, or gaseous combustible wastes are burned and changed into gases, and the residue produced contains little or no combustible material.

*Incinerator* means an engineered apparatus used to burn waste substances and in which all the factors of combustion temperature, retention time, turbulence, and combustion air can be controlled.

*Industrial solid waste* means solid waste that results from industrial processes and manufacturing.

*Infectious wastes* means those wastes resulting from the operation of medical clinics, hospitals, abattoirs, and other facilities producing waste which may consist of, but are not limited to, human and animal parts, contaminated bandages, pathological specimens, hypodermic needles, contaminated clothing, and surgical gloves.

*Land clearing debris* means rocks, soils, tree remains, trees, and other vegetative matter that normally results from land development operations, land clearing, or maintenance including yard trash and yard waste.

*Land clearing disposal facility* means a facility on a real property site no larger than 25 acres whose primary purpose is to hold vegetative land clearing debris whose characteristics allow it to operate in both urban and rural areas if certain conditions are met. Land clearing debris includes unpainted, nontreated

wood scraps and wood pallets that meet the definition of construction and demolition debris.

*Nonresidential solid waste* means solid waste from agricultural, commercial, industrial, or institutional activities or from parcels of property occupied by six or more residential units unless exempt by the board of county commissioners from mechanical pickup requirements.

*Pollution* means the condition caused by the presence in the environment of solid waste of such character and in such quantities that the quality of the environment is impaired or rendered offensive to life.

*Processing* means any method, system, or other treatment designed to change the physical form or chemical content of solid waste.

*Promiscuous dump* means an unauthorized site where indiscriminate deposits of solid waste are made by known or unknown persons and are exposed to the elements, vectors, and scavengers.

*Putrescible wastes* means materials capable of decomposition, causing environmental nuisances and/or obnoxious odors.

*Recovered resources* means solid waste materials which still have useful physical or chemical properties after serving a specific purpose and can, therefore, be reused or recycled for the same or other purpose.

*Recovery* means the process of obtaining usable materials or energy from solid waste.

*Recycling* means the process by which recovered resources from solid waste are transformed into new products in such a manner that the original products lose their identity.

*Rendering* means a process of recovering fatty substances from animal parts by heat treatment, extraction, and distillation.

*Reprocessing* means the action of changing the condition of a secondary material.

*Residential solid waste* means all solid waste that normally originates in a residential environment. This definition is applicable to the solid waste generated upon a parcel of property occupied by fewer than six residential units and to parcels exempted from mechanical pickup requirements.

*Residential unit* means any unit used to house persons, or capable of such use. Includes single-family dwellings; each unit in a duplex, condominium dwelling, or apartment house; and each mobile home in a mobile home parcel except mobile home parcels in rental or camp parks licensed by the health department.

*Rubbish* means solid waste or refuse, excluding garbage or bulky items; consists of both combustible and noncombustible trash, such as paper, cardboard, tin cans, plastics, yard clippings, wood, glass and similar materials.

*Salvage* means the extracting of materials from solid waste which is of value or useful.

*Salvaging* means the controlled removal of valuable or useful material from solid waste for utilization.

Escambia County Florida Code of Ordinances

*Sanitary landfill* means a site where solid waste is disposed using sanitary landfilling techniques.

*Sanitary landfilling* means an engineered method of disposing of solid waste on land in a manner that protects the environment by spreading the waste in thin layers, compacting it to the smallest practical volume, and covering it with soil by the end of each working day in compliance with applicable state law and F.A.C. ch. 17-7.

*Sanitary nuisance* means the commission of any act by a person, or the keeping, maintaining, propagation, existence or permission of anything by a person by which the health or lives of individuals may be threatened or impaired or by which disease may be caused.

*Scavenging* means the uncontrolled removal of materials at any point in solid waste management.

*Separation* means the systematic division of solid waste into designated components.

*Solid waste* means material including sludge from a waste treatment works, water supply treatment plant, or air pollution control facility or garbage, rubbish, or other discarded material, including solid, liquid, semisolid or contained gaseous material resulting from domestic, industrial, commercial, mining, agricultural, or governmental operations.

*Solid waste management* means all or any aspects of handling solid waste, including collection, transportation, storage, separation and disposal.

*Special permitted landfill* means a sanitary landfill limited to the disposal of construction and demolition debris, and operating under the provisions of a special permit issued by the board.

*Special wastes* means those wastes that require extraordinary management. Special wastes include, but are not limited to, bulky wastes, abandoned automobiles, white goods, used tires, waste oil, sludges, dead animals, agricultural and industrial waste.

*Storage* means the interim containment of solid waste, in an approved manner, after generation and prior to ultimate disposal.

*Transfer station* means a facility where solid waste from several relatively small vehicles is placed into one relatively large vehicle before being transferred to solid waste processing or disposal facility.

*Transport* means the movement of solid waste subsequent to collection.

*Unauthorized accumulation* means any accumulation of trash, garbage, or putrescible waste for more than seven days on any residential or commercial properties, excluding noncommercial composting and commercial composting for which a valid permit has been obtained in accordance with section 82-102. Unauthorized accumulation shall not include building materials used in constructing or repairing a building or other structure and stored at the site of such building or structure.

*Waste oil* means all types of waste oils, including waste automotive lubricants, industrial waste oils, and others that may be potential pollution sources.

*White goods* means inoperative and discarded refrigerators, ranges, washers, water heaters and other similar domestic and commercial appliances.

*Yard trash* means vegetative matter resulting from landscaping maintenance such as tree and shrub trimmings, grass clippings and palm fronds, trees and tree stumps, and includes land clearing debris and unpainted, nontreated wood scraps and wood pallets that meet the definition of construction and demolition debris.

*Yard waste* means vegetative matter resulting from landscaping and yard maintenance operations and other such routine property clean-up activities. It includes materials such as leaves, shrub trimmings, grass clippings, palm fronds, and brush. It does not include land clearing debris or tree cutting debris.

(Code 1985, § 1-29-2; Ord. No. 2017-21, § 1, 4-20-2017)

**Cross reference—** Definitions generally, § 1-2.



Sec. 82-226. - Classification of facilities and site requirements.

Facilities shall be classified into one of the following categories:

(1) *Construction and demolition debris (C&DD) facility.* A C&DD facility permitted by the county must comply with the following:

     a. Minimum size of the real property site shall be 100 acres.

     b. The required setback for construction and demolition debris facility "active areas" or "active permitted disposal areas" shall be a minimum of 500 feet from the property boundaries.

     c. Horizontal and vertical operational height shall be limited to the natural land surface before commencement of operations with allowance for closure and capping to prevent stormwater intrusion into the debris pile.

     d. Construction and demolition debris facility "active areas" or "active permitted disposal areas" may not be within 1,000 feet of a public water well or within 500 feet of a private potable well, or within a seven year time of travel line for groundwater. For the purpose of this subsection, a private potable well is a well that provides the drinking water supply to a private residence for human consumption and is required because publicly provided drinking water is not reasonably available to supply the private residence. Nor may these facilities be located within an area designated as "environmentally sensitive" by state or local ordinance, law or regulation. Any facility located within 500 feet of a river, stream or creek must have a stormwater control plan which addresses the protection of the adjacent waters.

     e. All sites must be approved by the board of county commissioners at a duly advertised public hearing following DRC review. At least ten days prior to the public hearing on an application to construct, operate, modify or close a facility under this section, the county shall post the subject site at a minimum of two locations easily viewed from the public right-of-way. The notice shall state the date, time and place of the hearing.

     f. May not be located in a regulatory floodplain or in areas identified by the county engineer to be subject to flooding.

     g. Shall consent to all enforcement procedures as herein set forth in section 82-240 as well as any legal remedy available to the county as a condition of permitting.

     h. Three-strand barbed wire fencing is required wherever any boundary abuts a public road to limit access.

(2) *C&DD facilities permitted by the county prior to August 21, 2014.* Any C&DD facility that was permitted by Escambia County as a regional facility, a rural facility or an infill facility prior to August 21, 2014, and that facility's permit was active on August 21, 2014, or was considered tolled by Escambia County on August 21, 2014, shall be subject to limited vesting as set forth

below and is subject to the following regulations regarding acreage of the facility, setbacks for active areas, horizontal and vertical operational height of debris, liners and siting relative to water wells. In all other respects, the facility shall be required to comply with the requirements of this division and the county's permit conditions unless a specific exception is granted by the board of county commissioners during the permitting process. An existing facility that did not obtain a county permit prior to August 21, 2014, shall not be entitled to vesting pursuant to this section.

a. A facility permitted as a regional facility on August 21, 2014 shall comply with the following:

1. Minimum size of the real property site shall be 100 acres.

2. The setback for the active permitted disposal area shall be a minimum of 500 feet from the property boundaries.

3. The horizontal and vertical operational height shall be governed by the ability to view the debris from adjacent properties. At no time shall the working or operational height exceed the permitted height or be visible from beyond the property line including materials stored for future disposal or recycling.

4. Facility "active areas" or "active permitted disposal areas" may not be within 1,000 feet of a public water well or within 500 feet of a private potable well. Nor may these facilities be located within an area designated as "environmentally sensitive" by state or local ordinance, law or regulation. Any facility located within 500 feet of a river, stream or creek must have a stormwater control plan which addresses the protection of the adjacent waters.

5. Liners and leachate collection systems not required for any active areas if properly permitted by FDEP on or prior to July 1, 2010.

b. A facility permitted as a rural facility on August 21, 2014 shall comply with the following:

1. Maximum size of real property site shall be 75 acres.

2. The required setback for construction and demolition debris facility active areas or "licensed disposal areas" shall be a minimum of 100 feet from property boundary. In order to accomplish this setback, clean fill or vegetative debris may be used to fill from existing excavation limits.

3. Horizontal and vertical height during operations shall be as required for new facilities according to section 82-226 of this division. However, in the event a previously issued county permit provided that a department of environmental protection permit established a different horizontal or vertical operational height then that standard may apply, but only as to the "active areas" or "active permitted disposal areas" as of August 21, 2014.

4. Facility "active areas" or "active permitted disposal areas" may not be within 1,000 feet

Escambia County, FL Code of Ordinances

of a public water well or within 500 feet of a private potable well. Nor may these facilities be located within an area designated as "environmentally sensitive" by state or local ordinance, law or regulation. Any facility located within 500 feet of a river, stream or creek must have a stormwater control plan which addresses the protection of the adjacent waters.

5. Liners and leachate collection systems not required for any active areas if properly permitted by FDEP on or prior to July 1, 2010.

c. A facility permitted as an infill facility on August 21, 2014, shall comply with the following:

1. Maximum size of real property site shall be 50 acres.

2. The footprint setback shall be a minimum of 100 feet from property boundary. In order to accomplish this setback, clean fill or vegetative debris may be used to fill from existing excavation limits.

3. Horizontal and vertical height during operations shall be as required for new facilities according to section 82-226 of this division. However, in the event a previously issued county permit provided that a department of environmental protection permit established a different horizontal or vertical operational height then that standard may apply, but only as to the "active areas" or "active permitted disposal areas" as of August 21, 2014.

4. Facility "active areas" or "active permitted disposal areas" may not be within 1,000 feet of a public water well or within 500 feet of a private potable well. Nor may these facilities be located within an area designated as "environmentally sensitive" by state or local ordinance, law or regulation. Any facility located within 500 feet of a river, stream or creek must have a stormwater control plan which addresses the protection of the adjacent waters.

5. Liners and leachate collection systems not required for any active areas if properly permitted by FDEP on or prior to July 1, 2010.

(3) *Transfer facility.* A transfer facility, including an LCD transfer facility, must comply with the following:

a. May not be located in a regulatory floodplain.

b. Appropriate buffering from adjacent properties is provided; appropriateness will be determined by the DRC process.

c. No person shall cause, suffer, allow or permit the discharge into the air of dust, fumes, gas, mist, odor, smoke or vapor, or any combination thereof, so as to constitute a nuisance as defined herein.

d. All operations must be fenced with county approved materials to the extent necessary to eliminate visibility of the facility and to limit access.

e. All transfer facility sites must be approved by the board of county commissioners at a

duly advertised public hearing following DRC review. At least ten days prior to the public hearing on an application to construct, operate, modify or close a facility under this section, the county shall post the subject site at a minimum of two locations easily viewed from the public right-of-way. The notice shall state the date, time and place of the hearing.

f.  May not be within 1,000 feet of a public water well or within 500 feet of a pre-existing private potable well or within a seven-year time of travel line for groundwater. Nor may these facilities be located within an area designated as "environmentally sensitive" by state or local ordinance, law or regulation. Any facility located within 500 feet of a river, stream or creek must have a stormwater control plan which addresses the protection of the adjacent waters.

g.  Shall consent to all enforcement procedures as hereinafter set forth in section 82-240, as well as all legal remedies available to the county, as a condition of permitting.

(4) *Land clearing disposal facility (LCD)*. An LCD must comply with the following:

a.  Maximum size of real property site shall be 25 acres.

b.  Operational footprint setback shall be a minimum of 100 feet from the property boundary limit. However, this setback shall be a minimum of 300 feet from any property boundary that abuts any existing residential use or residential zoning category. In order to accomplish this setback, clean fill may be used to fill from existing excavation limits.

c.  Horizontal and vertical height during operations shall be limited to the natural land surface before commencement of operations with allowance for closure and capping to prevent stormwater intrusion into the debris pile.

d.  Volume reduction, including incinerating, pulverizing, compacting, shredding, baling or similar activities shall only be allowed if specifically authorized by the county during the permitting process.

e.  All LCD sites must be approved by the board of county commissioners at a duly advertised public hearing following DRC review. At least ten days prior to the public hearing on an application to construct, operate, modify or close a facility under this section, the county shall post the subject site at a minimum of two locations easily viewed from the public right-of-way. The notice shall state the date, time and place of the hearing.

f.  Shall consent to all enforcement procedures as hereinafter set forth in section 82-240 as well as all legal remedies available to the county, as a condition of permitting.

g.  Any LCD facility permitted by the county prior to August 21, 2014, and that had an active or tolled permit on August 21, 2014, shall be subject to limited vesting as set forth below and is subject to the following regulations regarding acreage of the facility, setbacks for

active areas and horizontal and vertical height of operations. In all other respects, the facility shall be required to comply with the requirements of this division.

1. Maximum size of real property site shall be 25 acres.

2. Operational footprint setback shall be a minimum of 100 feet from the property boundary limit. In order to accomplish this setback, clean fill may be used to fill from existing excavation limits.

3. Horizontal and vertical height during operations shall be allowed to the operational height resulting from their DEP permit only as to LCD facility active areas as permitted on August 21, 2014.

h. Staging or storage of LCD shall require a permit pursuant to this section, subject to variances granted by the board of county commissioners. The staging or storage of solely clean fill shall be exempt from this permitting requirement.

i. Fencing is required on all sides of the facility a minimum of six feet in height with county-approved materials to eliminate visibility of a facility and to limit access. This provision applies to any boundary which fronts a public road or a residential structure. Areas which front undeveloped, uncleared properties may use an approved three-strand barbed wire fence. Vegetative buffering may be substituted for nontransparent fencing as long as visibility is eliminated.

(5) *Abandoned or closed C&DD, C&DD transfer or LCD facilities.* Any owner or operator of a C&DD, C&DD transfer or an LCD facility that the owner or operator asserts to be closed or abandoned shall meet the following requirements:

a. Closed C&DD, C&DD transfer or LCD facilities shall be those that have concluded a permitted closure plan, undergone a closure inspection and maintain a permit as a closed facility. A closed facility shall be subject to a minimum of one inspection per year and shall maintain the facility in a condition consistent with the closure plan. The fee resolution shall reflect a closed facility permit as a separate fee category. A closed facility shall not conduct any active operations and must obtain a permit from the board of county commissioners as an active facility prior to any operations at the site.

b. Abandoned C&DD, C&DD transfer or LCD facilities shall be those determined by the director of development services to meet the definition of abandoned pursuant to this article. All abandoned facilities shall be permitted as closed facilities pursuant to this article. The county may pursue any legal remedy to require an abandoned facility to become permitted as a closed facility; to address any condition that poses a threat to the public's health, safety or welfare; or to force compliance with this article. An abandoned facility shall not have any grandfathered or vested rights to conduct operations, although the board of county commissioners can consider grandfathering or vesting of certain rights as part of the permitting process on a case-by-case basis.

(Ord. No. 2015-31, § 1, 8-13-2015)

**Editor's note—** Ord. No. 2015-31, § 1, adopted Aug. 13, 2015, amended § 82-226 in its entirety to read as set out herein. Former § 82-226 pertained to classification of C&DD facilities and derived from Ord. No. 2006-24, § 2, adopted March 16, 2006; and Ord. No. 2008-6, § 1, adopted Jan. 24, 2008.

3/18/2021   Case 3:21-cv-00515-TKW-EMT   Document 2-1   Filed 03/25/21   Page 75 of **EXHIBIT**
Escambia County, FL Code of Ordinances

3

Sec. 82-228. - Permit required; fees and renewal.

(a) *General requirements.*

(1) No person shall operate a C&DD, transfer C&DD or LCD facility without a permit from the Escambia County Board of County Commissioners.

(2) The board shall establish by resolution, a permit application fee for the permitting of C&DD, transfer C&DD and LCD facilities. The application fee will be based upon the classification of the facility and may include reasonable inspection and testing costs as determined by the board.

(3) The board shall consider all permit applications at a public hearing. Properties subject to a permit application shall be posted by the county at least ten days prior to the hearing where the board will consider granting a permit pursuant to this article.

(4) All C&DD and transfer C&DD permits issued pursuant to this chapter shall be five years in duration or upon expiration of the facility's FDEP permit for C&DD disposal, whichever term is shorter. All LCD permits issued pursuant to this chapter shall be five years in duration. As a condition of obtaining and maintaining a C&DD, C&DD transfer or LCD permit, a permittee shall submit an annual affidavit on a form prepared by Escambia County that describes the scope of activities occurring on site, the percentage of the usable site filled with debris and the estimated lifespan for permitted activities occurring on the site. The permittee shall consent to periodic and random inspections of the site by Escambia County representatives, with such inspections to occur at a minimum of two times per year.

(5) Abandoned or closed facilities shall be permitted as closed facilities and shall comply with all other applicable provisions of the article.

(6) Repeated failure to comply with the provisions of this article and adopted rules and regulations may result in denial of an application for renewal and/or suspension of permit.

(7) In each instance where an applicant is required to provide a surety as a condition of a permit, the county will allow the applicant to provide a single financial mechanism to cover financial assurances for both the county and FDEP if an interagency agreement providing for such a program exists and when otherwise possible under the circumstances.

(8) Any variance granted by the board of county commissioners shall be specified during the public hearing at which a permit application is considered.

(b) *Specific permit application requirements for C&DD facilities and LCD facilities.*

(1) A permit application for a construction and demolition debris disposal facility shall be submitted on an "application for a permit to construct, operate, modify or close a construction and demolition debris or land clearing disposal management facility" issued by the Escambia County Development Services Department.

(2) Boundary survey signed and sealed by a registered Florida surveyor.

(3) Site plan. Provide a site plan, at a scale not greater than 200 feet to the inch, which shows the facility location and identifies the proposed waste and final residue storage areas, total acreage of the site, and any other features which are relevant to the prohibitions or location restrictions such as water bodies or wetlands on or within 500 feet of the site, and potable water wells on or within 1,000 feet of the site.

(4) Operational plan. Provide an operation plan for the facility which includes:

a. A description of general facility operations, the number of personnel responsible for the operations

including their respective job descriptions. and the types of equipment that will be used at the facility.

b. Procedures to ensure any unauthorized wastes received at the site will be properly managed.

c. A contingency plan to cover operation interruptions and emergencies such as fires, explosions, or natural disasters.

d. Procedures to ensure operational records needed for the facility will be adequately prepared and maintained.

e. Procedures to ensure that the wastes and final residue will be managed to not be expected to cause pollution.

(5) Design drawings.

(Ord. No. 2006-24, § 2, 3-16-2006; Ord. No. 2015-31, § 1, 8-13-2015)

Sec. 82-101. - Permit, certificate or franchise required; exception.

(a) All solid waste generated or otherwise found within the county shall be managed by persons holding valid permits for such activity, granted in accordance with this chapter, except as provided in this section. "Managed" as used in this section includes collection, transportation, and disposal by any means or method, and any aspect of handling hazardous or infectious waste prior to the time it is rendered safe, sanitary, and innocuous. Any person who engages in any solid waste management activity on a commercial basis, and any person who establishes a solid waste disposal facility, shall also hold a valid certificate of need or current county franchise. However, no certificate of need shall be required where the solid waste management permit is issued by the board of county commissioners. The board of county commissioners shall not issue a solid waste management permit to any person or facility whose activities are inconsistent with any solid waste management plan adopted pursuant to article II, division 1 of this chapter, will impair or infringe any obligations established by contract, resolution, or ordinance, or will result in a materially adverse effect on the net revenues of the county's solid waste disposal system, as determined by the board.

(b) Any person desiring to remove, through use of its own personnel and equipment, any solid waste collected on its own premises or created by its own operation, either to the county's disposal facilities or to disposal facilities possessing an unrevoked permit and for which a valid certificate of need has been issued in accordance with section 82-102 may do so without reference to this section.

(c) The exception provided above shall not apply to infectious or hazardous wastes. All producers of such waste shall obtain a permit in accordance with section 82-103 specifying the exact means and methods of managing such solid wastes.

(Code 1985, § 1-29-74; Ord. No. 2016-24, § 1, 5-19-2016)



EXHIBIT
4



Sec. 82-103. - Solid waste management permits.

Permits required under section 82-101 shall issued in the following manner:

(1) *Applications.* Any person desiring to obtain a permit shall file application for a permit with the director on application forms provided by the director and shall accompany such application with:

    a. Name and address of the applicant, showing its legal identity (individual, partnership, corporation, etc.).

    b. The business address of the applicant.

    c. An inventory of all motorized equipment or other equipment to be used in such collection, transportation, or disposal.

    d. The methods of storage, transport, and processing to be used.

    e. The location and type of processing and/or disposal contemplated.

    f. The types and amounts of wastes to be covered by permit, including description of project or process generating wastes.

    g. The route or routes to be used in transporting and schedules used.

    h. Issuance of county permits shall not relieve applicants from obtaining any required state or federal permits.

    i. Proof of all insurance and bonding required by this chapter (state financial responsibility limits for motor vehicles, etc.) or as established by resolution of the board from time to time.

    j. Proof that applicant has acquired any required certificates of need.

    k. Statement of desired duration of permit, if less than one year.

    l. Application fee established by resolution of the board.

    m. All other information reasonably required by the director to fulfill the intent of this chapter.

(2) *Inspections.* Upon receipt of a completed application, the director shall, within five days, refer the application to the solid waste division for investigation. The solid waste division shall inspect all facilities and equipment to be used in the applicant's activity and shall report his findings to the director within six days of receipt, and the director shall take appropriate action within ten days thereafter.

(3) *Issuance.* Upon determining that the activity, service or facility for which the permit is sought will comply with the terms of this chapter and with all county regulations and ordinances, that no certificate of need is required, and that the applicant's service, activity, or facility will be in the best interest of the public, the director shall grant a permit allowing the pursuit of such activity upon such terms and conditions as the director may deem to be in the public interest.

(4) *Modifications.* If the director determines that a permit should not be issued based upon the above criteria, but if in the director's opinion, modification can be made which will bring the application within the intent and purposes of this chapter, he shall notify the applicant or applicants, in writing, setting forth the correction to be made and the time in which such correction shall be completed.

(5) *Denial.* If the applicant fails to make the corrections pursuant to the notice mentioned above within the time limit specified therein, or, if the administrator previously determined that a permit should not be issued based on the above criteria, the application shall be denied and the applicant notified, in writing, stating therein the reasons for denial. Nothing in this section shall prevent any applicant from reapplying

after the rejection of his application, provided the requirements of this chapter are met. Appeals of such denials may be made in the manner provided for appeals or revocation of permits as provided in subsection (10) of this section.

(6) *Duration.* When issued, such permit shall be effective for the period of time necessary to accomplish the desired service, activity, or facility operation, up to a period of one year from the granting thereof, or in the case of a franchised holder, for the duration of the franchise, unless the permit is sooner revoked pursuant to the provisions of this chapter.

(7) *Permit renewal.* Any permit holder desiring to renew an existing permit shall complete and submit to the director an application therefor not more than 45 days nor less than 15 days before the expiration date thereof and shall tender with each application form such permit fees as are require by resolution of the board of county commissioners.

(8) *Permit number, display.* All motor vehicles operating under any permit required by this chapter shall display the permit number or numbers on each side, in colors which contrast with that of the vehicle, such numbers to be clearly legible and not less than six inches high.

(9) *Evaluation of performance.* The performance under this chapter of all those holding permits shall be evaluated by the director from time to time. If at any time during the life of the permit, performance satisfactory to the director shall not have been made, the permittee upon notification by the director, shall take necessary steps including, but not limited to, increasing the work force, vehicles and equipment as needed to properly perform his duties. The failure of the director to give such notification shall not relieve the permittee of his obligation to perform the work at the time and in the manner specified in his permit.

(10) *Revocation; appeals.* If, after notice of unsatisfactory performance has been given, the permittee has failed to make necessary corrections within a reasonable time, the director may revoke the permit. Additionally, the director may revoke the permit of any permit holder when the director determines that the permit holder has failed to maintain proper insurance as required by the board of county commissioners. Appeal from any decision of the director revoking such permit may be taken to the board of county commissioners by the aggrieved party by filing a petition with the clerk of the board within ten days after the mailing of notice of such appeal. Upon receipt of such petition, the board of county commissioners shall set a time and place for a hearing upon the petition. The appeal shall proceed in accordance with due process of law. Revocations shall not be final until such appeals are heard.

(11) *List of permit holders.* The director shall maintain a complete listing of all persons holding permits to provide solid waste management services within the county. The listing shall contain the name and address of each person, its office telephone number, the number and types of vehicles used by such persons, the nature and extent of services, activities, or facilities permitted, and the expiration date of the permit.

(Code 1985, § 1-29-76; Ord. No. 2008-10, § 1, 1-24-2008)



**EXHIBIT**

6

PAM CHILDERS
CLERK OF CIRCUIT COURT
ESCAMBIA COUNTY, FL

2017 JUL 11 P 1:41

CIRCUIT CIVIL DIVISION
FILED & RECORDED

IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

**EAGER BEAVER PROFESSIONAL
TREE CARE, LLC,**

        Petitioner,

v.

**ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,**

        Respondent.

_____/

**CASE NO: 2017 CA 000030**

OPINION filed _July 10_, 2017.

George R. Mead, II, Esq. and Kimberly S. Sullivan, Esq. of Moore, Hill & Westmoreland, P.A.
Post Office Box 13290, Pensacola, Florida 32591 | Counsel for Petitioner

Meredith D. Crawford, Esq., Assistant County Attorney, 221 Palafox Place, Suite 430,
Pensacola, FL 32502 | Counsel for Respondent

      A Petition for Writ of Certiorari was filed January 9, 2017 by Petitioner, EAGER

BEAVER PROFESSIONAL TREE CARE, LLC. ("Petitioner"). An Order to Show Cause was

issued to Respondent, ESCAMBIA COUNTY BOARD OF COUNTY COMMISSIONERS

(hereinafter "County"), on January 23, 2017. The Court has jurisdiction. *Fla. R.App. Proc.*

9.100.

      Respondent Escambia County filed a Response docketed February 13, 2017. Petitioner

filed a Motion to Strike docketed March 6, 2017, and that motion was granted in part on an

Order docketed April 24, 2017. The County thereafter filed its Amended Response to the

Petition docketed May 8, 2017, and Petitioner its Reply on May 18, 2017. Oral argument was

taken in Chambers on May 31, 2017.

1

## SUMMARY

After further consideration of the Petition for Writ of Certiorari, the Amended Response filed by the County, the Reply filed by Eager Beaver, the argument of counsel and applicable case law, the Court GRANTS the Writ of Certiorari. The denial of Eager Beaver's request for conditional use determination is QUASHED; since grant of the conditional use determination/permit is mandatory upon evidence of the required conditions, and in view of the want of the County's lawfully required findings for conditions of denial, on remand the conditional determination/permit is due to be granted on this record, and the County is not authorized to undertake further evidentiary proceedings or findings.

## DISCUSSION

The Land Development Code language at issue is as follows: "If an applicant has presented competent substantial evidence proving the required conditions, the board shall grant a conditional use, unless the board finds from the evidence presented that granting the conditional use will be adverse to the public interest."

The Court understands that it is not authorized to re-weigh the evidence, but instead to evaluate the Petition on three prongs: whether there was due process-i.e., notice and opportunity to be heard; whether the essential requirements of law were complied with; and whether the administrative findings were supported by competent substantial evidence. Broward Cty. v. G.B.V. Int'l, Ltd., 787 So. 2d 838, 843 (Fla. 2001).

### *Due Process*

Not only did the County limit Eager Beaver to six minutes for their presentation, but it refused to allow presentation in the order requested by counsel for Petitioner.   Counsel timely objected and stated that since Petitioner had the burden of proof, they should be given adequate time and format to do so.  In addition, counsel asked to extend the time to cover the sixteen items

2

required to be covered. This was denied. This cannot qualify as procedural due process in the sense of having an opportunity to be heard in a meaningful manner.

Moreover, in the Reply, counsel for the County objected to the index/exhibits tendered at the hearing on December 8, 2016, as inadmissible arguing that the Petitioner's index/exhibits were not formally introduced at the hearing. Of course, there was no time given to the Petitioner to fully address those items contained in its index. The County argued that the Petitioner's indexed documentary evidence was, instead, provided to the Board of County Commissioners outside of the hearing in the same manner that the County's packet was provided to the Board of County Commissioners. The County argued that if the County's packet was not admissible for consideration, neither should the Petitioner's index be allowed. However, during Petitioner's presentation in the record of the hearing, its indexed documentary materials (including the County's own development order) were expressly tendered three separate times for consideration, and without objection. The County never addressed its previously submitted packet at the hearing on December 8, 2016.

Despite the violation of due process, Petitioner's submission did meet their initial burden on the ordinance factors for the conditional use determination/permit. In fact, there has not been a suggestion by the County that they did not do so.

### Competent Substantial Evidence

Moving to the third prong-whether the administrative findings were supported by competent substantial evidence: the Court finds Petitioner's argument persuasive that there were no findings. Findings are required under the ordinance and by the nature of the proceeding. Lee County v. Sunbelt Equities, II, Ltd. P'ship, 619 So. 2d 996, 1002 (Fla. 2d DCA 1993). Jennings v. Dade County, 589 So. 2d 1337, 1340 (Fla. 3d DCA 1991)("In quasi-judicial zoning proceedings, the parties must be able to present evidence, cross-examine witnesses, and be

3

informed of all the facts upon which the commission acts.") A motion from a Commissioner that he is moving for denial-"I believe for the various reasons we're presented tonight-move for denial," does not qualify as findings that granting the conditional use will be adverse to the public interest. There was no identification of the evidence that the BOCC relied upon in denying the conditional use. Nor is there any recitation of grounds. The Motion itself did not identify any findings.

In addition, based upon the record evidence below, there was no basis for the BOCC to deny the conditional use permit.

### *Grant of Writ*

As far as the remedy, the Court has considered both Broward County v. G.B.V. International, Ltd., 787 So. 2d 838, 844 (Fla. 2001) ("When the order is quashed,... the parties stand upon the pleadings and proof as it existed when the order was made...") and Dep't of Highway Safety & Motor Vehicles v. Azbell, 154 So. 3d 461 (Fla. 5th DCA 2015). The County argued that this Court has no authority to substitute its decision for that of the Board or to direct the Board to enter a particular order or judgment, and further, that this Court may only quash the decision and remand to the Board for further consideration. This is certainly true, however, it is not the Court that commands grant of the permit but the County's own law in the mandatory ordinance.

At this stage, the County in further proceedings cannot depart from the essential requirements of law on the established record. The Petition squarely puts at issue whether the record supports denial. The Court has held that it does not. The Court finds there is inherent authority to enforce this court's mandate on remand. Azbell, 154 So. 3d at 463. Upon remand the County is not authorized to conduct a further or additional hearing. Azbell, 154 So. 3d at 462 ("in administrative proceeding, upon failure of agency to present sufficient proof of costs, no

4

entitlement to second opportunity."; citing <u>Doll v. Dep't of Health</u>, 969 So.2d 1103, 1107 (Fla. 1st DCA 2007)). Absent required findings, which are not present, the County cannot deny the permit. The only lawful result under this mandatory ordinance is the County's grant of the conditional use permit. The Court does not invade the lawful discretion of the County in ruling that the law at issue leaves it no further discretion to exercise.

It is therefore ORDERED that the County's denial is hereby QUASHED and the cause is REMANDED with direction that the record evidence supports prima facie conditions for the mandatory grant of the permits, and that no second opportunity is authorized for the County to undertake further evidentiary hearing or finding on conditions of denial. The Clerk shall issue the Mandate accordingly.

**DONE AND ORDERED** in Chambers at Pensacola, Escambia County, Florida this 10⁺ day of July 2017.

JAN SHACKELFORD
CIRCUIT JUDGE

COPIES FURNISHED:

George R. Mead, II (emead@mhw-law.com; hmalone@mhw-law.com)
Kimberly Sullivan (ksullivan@mhw-law.com; kgraham@mhw-law.com)
Meredith D. Crawford (mdcrawford@co.escambia.fl.us)

E-served on 7/14/17

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT IN AND
FOR ESCAMBIA COUNTY, FLORIDA

EAGER BEAVER PROFESSIONAL
TREE CARE, LLC

     Plaintiff,               Case No. 2020 CA 000328
                               Division: N
v.

ESCAMBIA COUNTY BOARD OF
COUNTY COMMISSIONERS,

     Defendant.
_____

## ANSWER AND AFFIRMATIVE DEFENSES

Defendant, Escambia County Board of County Commissioners (County), answers the allegations of the amended complaint as to Counts I and II, according to its numbered paragraphs, and alleges:

## PARTIES AND JURISDICTION

1.     Admitted.

2.     It is admitted that County is a political subdivision of the State of Florida.

3.     Admitted for jurisdictional purposes only.

4.     Admitted.

## FACTUAL BACKGROUND

5.     County is without knowledge as to whether Eager Beaver Professional Treecare, LLC (Eager Beaver) is a land management

company and, therefore, is denied.   It is admitted that Eager Beaver provides services for profit relating to trees, including trimming, removal, and stump grinding.

6.    As to the allegations of the first sentence, County is without knowledge as to the intent of Eager Beaver when it purchased the 70.52-acre real property and, therefore, is denied.  As to the second sentence, these allegations are admitted.

7.    The allegations of the first sentence are denied.  As to the allegations of the second and third sentences, County admits that the ordinances cited contain language as quoted.  As to the allegations of the fourth sentence, County admits that FDEP issued a permit entitled "General Permit for a Yard Trash Disposal Facility."  It is denied that the general permit uses the term "yard waste recycling."  The remaining allegations of the fourth sentence are denied.

8.    As to the allegations of the first sentence, the citations to the Code of County Ordinances are admitted, as are the quoted material.  However, it is denied that a land-clearing disposal facility is a sub-set of a construction and demolition debris facility.  The allegations of the second and third sentences are denied.  The allegations of the fourth sentence

2

containing reference to Exhibit A, is admitted, as a true and correct copy of the Impact and Operational Analysis performed by County.

9.      It is admitted that a site plan development order dated August 24, 2016, was issued for a yard trash processing facility to be reviewed by the Board of County Commissioners.

10.    Admitted.

11.    It is admitted that the Board of County Commissioners conducted a quasi-judicial public hearing on whether to grant a conditional use.  All remaining allegations are denied as superfluous to the issues in this case.

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Admitted.

16.    Denied.

17.    Denied.

18.    Denied.

19.    County is without knowledge as to when Eager Beaver's recycling operations were scheduled to begin and, therefore, the

allegations are denied.  Further, County denies that any delay was due to any unlawful actions by County.

20.    Denied.

21.    The allegations of the first sentence are admitted.    The remaining allegations contained in the second and third sentences are denied.

22.    Denied.

23.    As to the allegations of the first sentence, County is without knowledge and, therefore, are denied.    The allegations of the second sentence are denied.

24.    Admitted.

25.    Admitted.

26.    The allegations of the first sentence are admitted.    The allegations of the second sentence are admitted that the characterization by County of Eager Beaver's permit was a simple error, but the allegations are denied that there was any intention by County to create animosity in the community through the improper designation of Eager Beaver's operations as a concrete recycling facility.    The allegations of the third sentence are denied.

4

## COUNT I – DECLARATORY JUDGMENT AS TO PERMITTING

27.    County realleges its answer to paragraphs 1-26 and incorporates them by reference.

28.    Admitted for jurisdictional purposes only.

29.    Denied.

30.    Denied.

31.    Denied.

32.    Denied.

## FIRST AFFIRMATIVE DEFENSE

County is entitled under sovereign immunity to enforce its own ordinances under its discretionary power to protect the public health, safety and welfare of its citizens.  As Eager Beaver is operating a facility more closely resembling a solid waste management facility than a construction and demolition debris landfill, whereby yard trash is not being buried, but is being recycled and shipped offsite, the best definition for its operations is that contained in Section 82-101(a), Code of County Ordinances, which governs solid waste management and requires an annual renewal of a solid waste management permit.

## SECOND AFFIRMATIVE DEFENSE

The County's current permit for solid waste management applicable to Eager Beaver expires in June 2021.  Eager Beaver has not sought renewal of the solid waste management permit.  Accordingly, this suit for declaratory relief is both premature and seeks an advisory opinion before Eager Beaver loses any privileges to operate under a solid waste management permit.

## THIRD AFFIRMATIVE DEFENSE

Eager Beaver can never qualify to operate a C&DD facility or landfill, because its operations encompass only 70.52 acres. Section 82-226(1), Code of County Ordinances, requires that a real property site for a C&DD facility shall be at least 100 acres.

WHEREFORE, County demands that Count I of the amended complaint be dismissed with prejudice and that it be awarded taxable costs.

## COUNT II – DECLARATORY JUDGMENT AS TO DUE PROCESS VIOLATIONS (ALTERNATIVE TO COUNT III)

33.    County realleges its answer to paragraphs 1-26 and incorporates them by reference.

34.    Admitted for jurisdictional purposes only.

35.    Admitted.

36.    The allegations of the first sentence are admitted.    The allegations of the second sentence are denied.  The allegations of the third sentence, together with the citation to case law, are admitted.

37.    The allegations of the first sentence are admitted.    The allegations of the second sentence are denied.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

**FIRST AFFIRMATIVE DEFENSE**

County is entitled under sovereign immunity to enforce its own ordinances under its discretionary power to protect the public health, safety and welfare of its citizens.  As Eager Beaver is operating a facility more closely resembling a solid waste management facility than a construction and demolition debris landfill, whereby yard trash is not being buried, but is being recycled and shipped offsite, the best definition for its operations is that contained in Section 82-101(a), Code of County Ordinances, which

7

governs solid waste management and requires an annual renewal of a solid waste management permit.

## SECOND AFFIRMATIVE DEFENSE

The County's current permit for solid waste management applicable to Eager Beaver expires in June 2021.  Eager Beaver has not sought renewal of the solid waste management permit.  Accordingly, this suit for declaratory relief is both premature and seeks an advisory opinion before Eager Beaver loses any privileges to operate under a solid waste management permit.

## THIRD AFFIRMATIVE DEFENSE

Eager Beaver can never qualify to operate a C&DD facility or landfill, because its operations encompass only 70.52 acres. Section 82-226(1), Code of County Ordinances, requires that a real property site for a C&DD facility shall be at least 100 acres.

## FOURTH AFFIRMATIVE DEFENSE

To the extent that Eager Beaver is claiming violation of its due process rights under Florida law, Eager Beaver obtained all the due process to which it was entitled by its successful pursuit of a petition for writ of certiorari at the Circuit Court level and its successful defense of second tier certiorari review in the First District Court of Appeal.  Eager Beaver is

erroneously conflating the holding by the Circuit Court as to the denial of procedural due process through the limitation of the presentation of evidence in the quasi-judicial hearing before the Board of County Commissioners and whether the issuance of a solid waste management permit under County's solid waste management code is a deprivation of procedural due process. Under either argument asserted by Eager Beaver, County has not deprived Eager Beaver of any Florida procedural due process rights through the issuance of a solid waste management permit.

WHEREFORE, County demands that Count II of amended complaint be dismissed with prejudice and that it be awarded taxable costs.

Respectfully submitted,

Escambia County Attorney's Office
221 Palafox Place, Suite 430
Pensacola, Florida 32502
(850) 595-4970
(850) 595-4979 - Facsimile

/s/ Charles V. Peppler
By: Charles V. Peppler
Deputy County Attorney
Florida Bar No.: 239739
Attorneys for Defendant Escambia County, FL
cpeppler@co.escambia.fl.us
kcchappell@co.escambia.fl.us
sposborne@co.escambia.fl.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of March 2021, the foregoing document was furnished by E-Service to George R. Mead, II, More, Hill, Westmoreland, 350 West Cedar St., Ste. 100, Pensacola, FL 32502 at emead@mhw-law.com and hmalone@mhw-law.com.

/s/ Charles V. Peppler
By: Charles V. Peppler, Deputy County Attorney
Florida Bar No.: 239739